**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **KHRL GROUP, LLC** | § | **Case No. 19-50390** |
| | § | |
| **Debtor** | § | |
| **And** | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **PAPA GRANDE GOURMET** | § | **Case No. 19-50391** |
| **FOODS, LLC** | § | |
| | § | |
| **Debtor** | § | **Jointly Administered Under** |
| | § | **Case No. 19-50390** |

## DISCLOSURE STATEMENT TO JOINT SUBSTANTIVELY CONSOLIDATING CHAPTER 11 PLAN OF PAPA GRANDE GOURMET FOODS, LLC AND KHRL GROUP, LLC

**This Disclosure Statement and the relating Plan of Reorganization contain provisions whereby guarantors of certain pre-petition debts shall receive releases of their guaranties upon completion of all payments related to certain debts under the Plan. Consult the Plan to determine whether your guaranty will be released.**

## INTRODUCTION

KHRL Group, LLC ("KHRL"), and Papa Grande Gourmet Foods, LLC ("Papa Grande") ("Debtors" or "Debtors-in-Possession") file this Disclosure Statement to Joint Substantively Consolidating Chapter 11 Plan of Papa Grande Gourmet Foods, LLC ("Papa Grande" or "Debtor") and KHRL Group, LLC ("Consolidated Debtor" or "KHRL") (collectively the "Debtors").

On February 25, 2019, Debtors filed voluntary Petitions under Chapter 11 of the U.S. Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate as Debtors in Possession pursuant to the provisions of sections 1107 and 1108 of the Bankruptcy Code.

This Disclosure Statement to Plans of Reorganization (hereinafter "Disclosure Statement") has been prepared by the Debtors pursuant to Section 1125 of the Bankruptcy Code, which requires that creditors receive a written disclosure statement containing sufficient information about the Debtors to enable creditors to make an informed and intelligent decision regarding each debtors respective Plan of Reorganization (hereinafter "Plan" or "Plans"). Prior to the solicitation of your vote on the Plan, and as required by the Bankruptcy Code, the Bankruptcy Court has approved this Disclosure Statement as containing adequate information about the Debtors.

1

In addition to this Disclosure Statement and accompanying Plan, you will also receive an order of the Court setting the hearing on the confirmation of the Plan and establishing deadlines for casting your vote or filing objections to confirmation. Mailing instructions are included in your ballot. YOUR VOTE IS IMPORTANT. In order for each Plan to be accepted, at least two-thirds (2/3) in amount and one-half (1/2) in number of the voting creditors in each class must affirmatively vote for each respective Plan. Even if all classes of claims accept the Plan of a particular debtor, the Bankruptcy Court may refuse to confirm the Plan for that debtor. Among other things, Section 1129 requires that the Plan be in the best interests of the creditors and other parties in interest, and generally requires that the holders of the claims not receive less than would otherwise be realized if the debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In appropriate circumstances, the Bankruptcy Court may confirm a Plan even though less than all of the classes of claims accept the Plan. The circumstances warranting confirmation notwithstanding the vote of a dissenting class or classes of creditors are set forth in Section 1129(b) of the Bankruptcy Code. Except as otherwise provided in the Plan, the Order of Confirmation, or Section 1141(d), confirmation of the Plan will discharge the Debtor from all of its debts. Confirmation makes the Plan binding on the Debtor and all of its creditors, regardless of whether or not they have accepted the Plan.

## SUBSTANTIVE CONSOLIDATION

Section 1123(a)(5)(C) of the Bankruptcy Code, provides a method for adopting substantive consolidation, or consolidation of one debtor with one or more debtors, as part of a plan. *See In re Stone & Webster*, 286 B.R. 532 (Bankr. Del. 2002). Substantive consolidation "recognizes the Debtors' common business purpose, consolidates their respective debts, extinguishes the intercompany receivable, avoids the potentially costly litigation and expense that would be required to disentangle the Debtors' financial affairs and . . . allows for creditors of both Debtors to share *pari passu* in the Net Liquidating Trust Assets." *In re Hydroscience Techs., Inc.*, 2019 Bankr. LEXIS 370 *33-4 (Bankr. N.D. Tex. 2018).

While Section 1123 does not provide a mechanism for determining whether substantive consolidation is appropriate, courts have developed several factors, which are to be considered in determining whether substantive consolidation is appropriate, including: (1) the presence or absence of consolidated financial statements; (2) the unity of interest and ownership between the various corporate entities; (3) the existence of parent and intercorporate guaranties on loans; (4) the degree of difficulty in segregating and ascertaining individual assets and liabilities; (5) the transfer of assets without formal observance of corporate formalities; (6) the commingling of assets and business functions; and (7) the profitability of consolidation at a single physical location. *See In re Mortage Inv. Co.*, 111 B.R. 604 (Bankr. W.D. Tex. 1990).

Here KHRL and Papa Grande have several factors that weigh heavily in favor of substantive consolidation. First, the Debtors share common ownership. Second, the Debtors share liability on secured debt by virtue of the TransPecos Bank debt being cross collateralized. Next, the entities have performed in a manner that makes it difficult to segregate their individual assets and liabilities. By large the entities have ignored corporate formalities when doing business with each other. For example, Papa Grande has paid KHRL's mortgage for the last few years, rather than paying rent. Last, the consolidation of the two Debtors will ensure that each class of creditor,

2

whether secured or unsecured, is able to collect at a rate to be provided by this Plan.  When the real estate owned by KHRL sells, any amount over the $4.6 million owed by KHRL to TransPecos Bank will be paid to TransPecos Bank toward Papa Grande's secured equipment and inventory debts.  Hence, there would be no funds for KHRL's unsecured creditors unless KHRL were to seek contribution from Papa Grande, essentially making Papa Grande liable for KHRL's debts.  It is virtually impossible to untangle the parties debts, which is a fact that strongly favors substantive consolidation.

The Plan and Disclosure Statement shall constitute a motion to substantively consolidate KHRL with Papa Grande.  Accordingly, on the Effective Date, except as otherwise provided in the Plan: (a) for the purposes of making distributions pursuant to the Plan and post Effective Date governance, all assets and liabilities of KHRL will be treated as though they are merged into and with the assets and liabilities of Papa Grande; (b) no distributions will be made under the Plan on account of KHRL intercompany claims; (c) third-party guaranty claims for which KHRL is the primary obligor on the corresponding primary claim will be deemed merged so that any claim against KHRL and any guaranty thereof will be deemed to be one obligation of Papa Grande; and (d) the unsecured claimants of KHRL shall be treated along with the class 9 unsecured claimants of Papa Grande.  Confirmation of this Plan shall constitute Court approval of the substantive consolidation.

A.    The Debtors

Garcia Foods, Inc. is a family owned and operated business that was founded in 1956 when Andy Garcia first began producing barbacoa in his garage with an initial fifteen-dollar investment. Kenny Garcia, Andy's son, grew up in the family business as one of six children and took over day-to-day operations of Garcia Foods in 1999.

In 2009, Kenny Garcia left Garcia Foods and entered a new venture with his wife Hilda Garcia.  This new venture was called Papa Grande Gourmet Foods and was established in Texas as Papa Grande Gourmet Foods, LLC in 2012.  Kenny began developing new products including fully cooked items, and in 2014, Kenny Garcia purchased Garcia Foods, Inc. from his father. When Kenny purchase the assets of Garcia Foods, Inc. he merged it with his new business Papa Grande. Kenny and Hilda also started the entity KHRL Group, LLC in 2014 to hold the real estate purchased from Garcia Foods, Inc.  The main office and manufacturing plant is located at 1802 Jackson Keller, San Antonio, Texas 78213.

Garcia Foods was experiencing difficulty before it was purchased by Kenny, which was largely due to it being run as a "mom and pop" enterprise even though its sales were in excess of $12 million annually.  While Papa Grande always paid its secured debt payments to its primary lender TransPecos Bank, Papa Grande was unable to pay the 2017 property taxes that came due in January of 2018, and it entered into a payment agreement with Bexar County which ultimately resulted in TransPecos filing receivership proceedings.

During the bankruptcy Papa Grande has focused on improving its efficiency by hiring an experienced plant manager and a CPA/CFO to make operation and financial improvements.

Debtors' assets are listed in the attached Exhibits "C1 – C2"

**B.**     The Plan Proponents

The Debtors are the Plan Proponents in this case.

**C.**     The Disclosure Statement

Pursuant to Section 1125(b) of the Bankruptcy Code (Title 11 of the United States Code, hereinafter referenced as 11 U.S.C. section number), a precondition to solicitation of acceptances and rejections of a Plan of Reorganization from holders of claims or interests in the bankruptcy estate is that the holders be furnished with a copy of the Plan or a summary of the Plan and a written Disclosure Statement which contains "adequate information".

"Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed Plan.

11 U.S.C. 1125(a)(1).

Whether or not a disclosure statement contains adequate information is determined by the Court upon notice and hearing. 11 U.S.C. § 1125(b). All parties in interest may participate in this determination. After the disclosure statement is approved by the Court, a hearing will be set on confirmation of the Plan and a Plan package which includes copies of the Order Approving Disclosure Statement, Plan, this Disclosure Statement and Ballot will be sent to the parties entitled to vote on the Plan.

**D.**     Chapter 11

Chapter 11 is a portion of the Bankruptcy Code which provides a business with protection from their creditors while it seeks to reorganize their business affairs, including the repayment of their debts. The terms of the proposed reorganization are embodied in a Plan of Reorganization. While the Bankruptcy Code gives debtors many aids in the reorganization of their financial affairs, these aids are balanced with rights and protections afforded to creditors. Confirmation of a Plan of Reorganization is the objective of the Debtors in a Chapter 11 Reorganization Case. Performance of the confirmed Plan is the objective of the Debtors. The Plan is the terms by which the claims against and interests of the Debtors are satisfied.

**E.**    The Process of Confirmation

Hearing on Confirmation. Confirmation of a Plan is simply approval by the Court. This approval is sought by the Plan proponent at the hearing on confirmation. In order to obtain approval of the Court, the Plan proponent must show that the Plan meets all requirements for confirmation.

Requirements for Confirmation. The requirements for confirmation are listed in 11 U.S.C. § 1129(a). These requirements are part of the balancing of rights and aids between the Debtors and its creditors. Certain of the requirements for confirmation necessitate the solicitation of ballots from the holders of claims against and interests in the Debtors indicating either their acceptance or rejection of the Plan. Section 1129(a) does not require that each and every holder of a claim against or interest in the Debtors vote to accept the Plan in order for it to be confirmed by the Court. First, only those holding claims or interests which are in classes which are impaired are entitled to vote. Impairment is defined in 11 U.S.C. § 1124.

Impairment basically means an alteration of the legal, equitable or contractual rights of the holder of the claim or interest.  The Plan proponents must assert in the Disclosure Statement whether or not each class is deemed by them to be impaired.  The proponents' conclusion may be disputed by a creditor and the dispute resolved by the Court.  If a Plan impairs or changes the rights of any creditor, it must be accepted by at least one Class of impaired claims.  Second, only those ballots that are properly completed and timely delivered are counted.  Third, of those voting in each class, only a majority of the claims in number and at least two-thirds (2/3) in amount are needed for the acceptance of the Plan by that class.

Even if all classes of claims and interests accept the Plan, its confirmation may be denied by the Bankruptcy Court for the failure to meet some other requirement of Section 1129 of the Bankruptcy Code. Among those requirements is one that the Plan is in the best interest of claim holders and interest holders. That generally requires that the value to be distributed to claimholders and interest holders may not be less than such parties would receive if the Debtors were liquidating under Chapter 7 of the Code.

Cramdown: The Court may confirm a Plan even though a class of claims or interest holders rejects the Plan. Confirmation of a Plan over the rejection by one or more classes of claims or interests is generally referred to as "cram down". In order for the Plan to be confirmed in spite of the rejection by a class of claims or interests, the proponent of the Plan must show that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

Section 1129(b)(2) provides that the following standards are among the issues to be considered in determining whether the Plan is "fair and equitable" with respect to a particular class:

Secured Claims. The Plan is fair and equitable with respect to each class of secured claims if it provides that either:

1.       The holders are to retain their lien, whether the collateral is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of their secured claim, and are to receive deferred cash payments totaling not less than the allowed amount of their claims and

having a present value of not less than the value of the collateral or, in the alternative, secured creditors must receive their collateral in satisfaction of new secured claims.

      2.      The collateral is to be sold in a sale permitting the holder to "bid in" free and clear of holder's lien, with such lien to attach to the proceeds of such sale, and the treatment of the lien on such proceeds under either clause (1) or (3) hereof; or

      3.      The holders are to receive the "indubitable equivalent" of their claims.

<u>Unsecured Claims</u>. The fair and equitable requirement in the context of a class of unsecured claims requires that either:

      1.      The holders are to receive property with a present value equal to the allowed amount of their claims; or

      2.      No holders in a class junior to the rejecting class are to receive any property.

## I. REPRESENTATIONS

The statements contained in this Disclosure Statement are made as of the date of this Disclosure Statement unless another time is specified. Except as stated herein, no other representations concerning the Debtors, its business operations, the value of its property, or the value of any benefits offered to you in the Plan are authorized. **Any representations or inducements which are contrary to the information contained in this Disclosure Statement should not be relied upon by you in arriving at your decision**, and such representations or inducements and their origin should be immediately reported to Ronald J. Smeberg, The Smeberg Law Firm Counsel for the Debtors, 2010 West Kings Highway, San Antonio, Texas 78201; Telephone: (210) 695-6684.

**The Debtors and their counsel have made every effort to ensure that the information contained in this Disclosure Statement is accurate. We cannot, however, warrant that all of the data is completely accurate, even though we believe it is materially accurate to the best of our knowledge, information and belief. The information in this Disclosure Statement has not been subject to an independent audit, and financial information has been based upon our internal records. If any statements of financial matters were made by third-party accounting professionals accompany this Disclosure Statement, they will contain a disclaimer required of unaudited financial information. Further, you should not construe the Bankruptcy Court's approval of this Disclosure Statement as an endorsement of the Plan or a guaranty of the accuracy or completeness of the information presented herein.**

The Debtors have expended considerable time in devising a Plan which it believes to be financially feasible and fair to its creditors. Consequently, the Debtors urge you to vote for acceptance of the Plan.

## II. INFORMATION CONCERNING THE DEBTORS

A.    Results of Operations as Debtors in Possession

The Debtors have continued to successfully operate their business and pay their post-petition plan obligations.   Debtor has decreased its overtime by over 100 hours per month and has reduced its workforce considerable while maintaining the same production.

Debtors have been able to have positive cash flow by better managing its workforce and improving efficient due to the efforts of its new plant manager Mark Myer.  Debtor started the bankruptcy with zero finished product inventory, about $31,000 in cash and $337,000 in receivables.  As of week 14, Debtor had $615,000 in receivables, $18,000 in cash, and $60,000 in finished inventory.  Debtor is dispatching its largest Debt through sale or auction and has the cash flow and business to fund the plan.

B.    Estimated Future Income and Expenses

The Debtors have attached as Exhibit "B", proformas they have prepared that show how projections for its finances the next several years.

The Debtors' pro-forma financial statement accurately and fairly project the Debtors' future income and expenses based on current operations and reasonable expectations of the future.

C.    Future Management of the Debtors

Papa Grande will continue to manage its financial affairs more efficiently than it did prior to the bankruptcy filing as a part of its Plan of Reorganization.   KHRL Group, LLC's only asset shall be sold and its liabilities shall become the responsibility of Papa Grande.  The Debtor will be able to make monthly plan payments with money generated by its food processing operations.

Kenny Garcia shall continue as president of Papa Grande and Hilda Garcia its vice president.  Mark Myers shall continue as the plant manager.  Paul Randles is the current CFO/CPA. Once completed with restructuring the plants financial processes, Paul Randle likely will be replaced with an experienced comptroller at less cost to the company.

D.    Summary of the Plan

KHRL shall be substantively consolidated into Papa Grande and all assets and liabilities shall be allocated to Papa Grande.

Debtor shall generally pay non-governmental secured lenders 6.5 percent interest on their loans unless otherwise stated in the Plan.  The duration of the secured loan payouts shall be in accordance with the stated plan treatment for each creditor.

Debtor shall pay property taxes currently due and payable for tax year 2019 in January 2020 using its escrowed property taxes.  Debtor shall pay property taxes for tax years prior to 2019 in regular monthly installments within 60 months of the date of the order for relief and at the statutory interest rate.

Debtor shall pay past due federal payroll taxes in regular monthly installments within 60 months of the date of the order for relief and at the statutory interest rate in effect on the confirmation date, currently 6.0%.

Debtor shall pay Texas priority comptroller claims in regular monthly installments within 60 months of the date of the order for relief and at the statutory interest rate in effect on the confirmation date.

Debtor shall pay critical unsecured vendor claims a 75% dividend in quarterly payments over 60 months beginning January 1, 2020.

Debtor shall pay general unsecured claims a 75% dividend over 8 years beginning October 1, 2020.

Debtor shall pay unsecured insider claims a 75% dividend over 8 years beginning after the general unsecured creditor payments have completed.

Kenneth and Hilda Garcia are the equity holders and shall retain their interests in Debtors.

## III. ANALYSIS AND VALUATION OF PROPERTY

A.    Real and Personal Property

The Debtors have attached Exhibit "C1 – C2" which are each respective Debtor's Schedule A/B – Real and Personal Property filed by the Debtors with the Court.

B.    Liquidation Analysis

Debtors' value is in their ability to operate and generate cash flow. Debtors' schedules attached as Exhibit C1 – C2 show Debtors assets as of the filing date. Exhibit E shows Debtors' current receivables, cash on hand, and value of assets compared to the secured/priority claims and unsecured claims. Exhibit E shows that in an expedited liquidation, the unsecured class would receive no dividend.

Compared to the substantial secured and priority Debt discussed in the claims below, it is very clear that an expedited liquidation would not provide for any dividend in to the unsecured creditors for any of the Debtors. Therefore, a performing plan is a much better option for repaying unsecured creditors who will receive 75% under the plan.

## IV. SUMMARY OF PLAN OF REORGANIZATION

A.    Administrative Expenses

Administrative Expenses: Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment. These claims do not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent

they may not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC. (Attorneys) | $100,000.00 |
| Barry Snell | $25,000 |
| US Trustee | $20,000.00 |
| Total Estimated Admin Claims | $145,000.00 |

(This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.)

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

B.    Classification and Treatment of Governmental Claims

1.    Non-Ad Valorem Secured and Unsecured Priority Claims

a.    Internal Revenue Service.   The IRS filed proofs of claims in each respective Debtor's case for priority or secured claims as follows:

i.    The IRS filed an amended proof of claim in the amount of $103,177.89 for priority debt in Papa Grande and $100 in KHRL. Debtor shall pay the IRS claim in equal monthly installments at 6% interest (or the statutory rate in effect on the confirmation date) within 5 years of the petition filing date. The first payment shall be due the 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month.

ii.    Debtors shall have thirty (30) days from the Effective Date to object to the IRS claims; otherwise, such claims are deemed as an allowed secured or priority claim in the amount of the IRS' filed Proof of Claim consistent with the treatment of each tax account under this Plan.

iii.    The secured and unsecured priority debts owed by the Debtors to the Internal Revenue Service (IRS) are Non-Dischargeable debts, except as otherwise provided for in the Code, and that if the Debtors default, the IRS

is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The Liens continue to be enforceable against all of the debtors' property under federal law.

iv.   A failure by the Debtors to make a payment to the Internal Revenue Service pursuant to the terms of the Plan and/or failure to remain current on filing and paying post-confirmation taxes, shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the 30th day of each month.  If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within 15 days of the date of the demand letter.  Each Debtor can receive up to three notices of default from the Internal Revenue Service; however, on the third notice of default from the Internal Revenue Service the third notice cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.  These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority and unsecured general.

v.   The IRS is bound by the provisions of the confirmed plan and is barred under 11 USC 1141 from taking any collection actions against the debtors for prepetition claims during the duration of the Plan (provided there is no default as to the IRS).  The period of limitations on collection remains suspended under 26 USC 6503 (h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 30 days after the date of the demand letter (described above) for which the debtor failed to cure the default.

vi.   The Internal Revenue Service will agree to withhold collections of the trust fund recovery penalty assessment against the responsible persons during the duration of the Plan (provided there is no default as to the IRS). This agreement only encompasses the tax periods involved in and provided for under the confirmed plan.  The forbearance of collection efforts by the Internal Revenue Service does not preclude any action by the IRS to file liens or otherwise to proceed with investigation, assessment or perfection of a security interest against the responsible persons as permitted under federal and state law.  The IRS will withhold collection efforts against responsible persons and the period of limitations on collection will be suspended under 26 U.S.C. 6503(h) for the trust fund periods and until the earlier of (1) all required payments to the Internal Revenue

Service have been made under the Plan; or (2) ten (10) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

vii. The Debtor must remain current with respect to all post-petition federal tax liabilities, including, but not limited to making timely federal tax deposits, the timely filing of tax returns and payment of all tax liabilities as required by applicable law during the term of the Plan. Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default under the Plan; however, the Bankruptcy Court shall have no jurisdiction over any tax issues arising after the date of confirmation. There will be no automatic stay or post-confirmation injunction with regard to federal tax liabilities accrued after the Petition Date (February 25, 2019), and the IRS shall be free to collect any such liabilities in accordance with the provisions of Title 26 of the United States Code and other applicable law.

viii. To the extent the Debtor has made, or makes in the future, any overpayment of post-petition taxes, post-petition over payments of federal taxes may be setoff against any post-petition federal tax liabilities as allowed by applicable law.

ix. Federal Tax Liens survive plan confirmation and continue to attach and be enforceable against all property of the Debtor. Federal Tax Liens will be released when the liability is satisfied or when the Debtor makes all payments to the IRS pursuant to the plan, whichever occurs first.

b. Comptroller of Public Accounts

i. The Texas Comptroller of Public Accounts (the "Comptroller") filed the following claim in Debtor's case:

ii. The Texas Comptroller filed a claim in the amount of $10,150. This unsecured priority debt shall be paid in full in equal monthly installments at the statutory rate of interest within 60 months of the date the bankruptcy case was filed, with the first payment being made on the fifteenth (15th) day of the first month following 30 days after the Plan's Effective Date and subsequent payments on the 15th day of each following month.

iii. Notwithstanding anything in the Plan to the contrary, but with respect to the Texas Comptroller only, the Plan shall not limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist.

iv. Notwithstanding anything in the Plan to the contrary, but with respect to the Texas Comptroller of Public Accounts only, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax. This provision is not admission by any party that such liability exists. A failure by the reorganized Debtor to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the reorganized Debtor at: P.O. Box 1438, Converse, TX 78109-4186, Attn: Chief Executive Officer, and upon Debtor's attorney at: The Smeberg Law Firm, PLLC, 2010 W. Kings Highway, San Antonio, TX 78201-4926, Attn: Ron Smeberg, Esq.

v. The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt

c. A failure by the reorganized Debtor to make a payment to the TWC or the Comptroller pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the TWC or the Comptroller, the TWC or the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the reorganized Debtor at: 1802 Jackson Keller, San Antonio, TX 78213, Attn: Chief Executive Officer, and upon Debtor's attorney at: The Smeberg Law Firm, PLLC, 2010 W. Kings Highway, San Antonio, TX 78201-4926, Attn: Ron Smeberg, Esq. The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the TWC or the Comptroller, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt.

2. <u>Secured and Unsecured Priority Claims of Property (Ad Valorem) Taxing Authorities</u>

a. The following claims were made in each respective case by property taxing authorities:

i. <u>KHRL, Group, LLC</u>
Filed Claim No. 1        Bexar County        $126,639.66

ii. <u>Papa Grande Gourmet Foods, LLC</u>
Filed Claim No. 1        Bexar County        $92,189.26

12

iii.   Taxes associated with the real estate located at 1802 Jackson Keller, San Antonio, Texas shall be paid upon sale of the property.   Personal Property taxes shall be paid as follows: Ad Valorem taxes for 2018 and prior will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date.  Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full.  Debtor shall make separate payments on each account consistent with separate amortization schedules provided to the Debtor.  Each separate payment which will be applied pro rata to the various tax accounts indicated above.

iv.   Debtor shall pay 2019 Ad Valorem Taxes when they come due in January 2020.

v.   In the event a Debtor sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtor shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred.

vi.   A Debtor may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time.  The Debtor shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan.  The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full.   Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment.

vii.   Should a Debtor fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtor' counsel advising of that default, and providing the Debtor with a period of fifteen (15) days to cure the default.  In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtor, pursue all of their rights and remedies available to

them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Debtor are still paying any pre-petition debt, shall be considered an event of default. Debtor shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

3. <u>Non-Government Claims and Interests:</u>

**<u>Class 1 Claims:</u>**

Class 1 consists of the **impaired** secured claims of TransPecos Bank ("TransPecos") in the amount of $1,462,069.97 ("PP Notes"), which is the principal and interest of one line of credit loan and one equipment loan ("PP Notes") secured by Papa Grande's personal property and $4,583,870.00 ("Plant Note") secured by a deed of trust over KHRL Group's real estate located at 1802 Jackson Keller (the "Plant"). These debts are cross collateralized and combined they shall be referred to as the "Total Debt." Debtor has filed a motion to employ a broker to sell the Plant, first through conventional advertising and then if the plant does not sell within 6 months, by auction.

Upon payment of all funds owed to TransPecos pursuant to this Plant of Reorganization, TransPecos shall release all liens against all of Debtor's property.

If Debtor defaults on its payments to TransPecos and fail to cure after 7 business days written notice to Debtor and Debtor's counsel, which may be by email or certified mail, or defaults more than 3 times, then TransPecos may accelerate the note and pursue all remedies under TransPecos's loan documents, and default interest shall accrue in accordance with TransPecos's loan documents. Unless otherwise stated herein, TransPecos's loan documents shall govern. TransPecos shall retain all of its liens against Debtor's property as provide for in the loan documents except to the extent modified herein. TransPecos is impaired and shall vote on the plan.

**<u>If the Plant has not been sold prior to confirmation:</u>**

Debtor have been making combined $25,000 monthly adequate assurance payments, which likely shall increase to $38,000 on June 24, 2019. Of these amounts, $6,250 of each $25,000 and $7400 of each $38,000 payment shall be applied pro rata to accrued interest on the PP Notes and then to principal on the PP Notes. The remaining amounts of the adequate assurance payments shall be paid toward the Plant Note. After applying the adequate assurance payments, Debtor contends the outstanding balance for principal, interest, costs and attorney fees will be approximately $1,490,000 on the PP Notes and $4,650,000 on the Plant Note prior to the Plant sale.

Debtor shall continue making adequate assurance payments to TransPecos until the Confirmation Balance is determined. Within 20 days of the confirmation date, TransPecos shall provide Debtor's counsel in writing with an itemized accounting showing the total amounts it contends is owed on the Total Debt (after applying all post-petition payments, fees and costs as provided for above). Debtor shall have 30 days after timely receiving the alleged outstanding balance from TransPecos to file a claim objection with the Court. The final balance as determined by the Court upon a hearing on any objection shall be the "Confirmation Balance." Debtor shall make interest only adequate assurance payments to TransPecos on the Confirmation Balance at 6.5 % interest until the Plant is sold.

If the Plant sells pursuant to a conventional real estate contract, Debtor shall pay all amounts remaining on the Confirmation Debt after application of the sales proceeds at closing.

If the Plant goes to auction, the auction will allow for TransPecos to credit bid on the Plant. In the event the Plant sells for less than the amount owed on the Confirmation Balance, then the remaining deficiency claim ("Deficiency Claim") shall be paid as follows.

Debtor shall pay the entire Deficiency Claim amortized in 72 monthly payments at 6.5% interest to TransPecos. In the event the new amortization schedule causes the debtor to be required to make payments larger than $30,000 monthly, then the payments shall be set to $30,000 monthly and all principal and interest shall be due in a balloon payment in month 73. The first payment shall be due and payable on the first day of the month to occur 30 days after the sale of the Plant. Debtors shall continue making interest only payments as provided for above until the date the Plant is sold.

**If the Plant sells prior to confirmation:**

Within 10 days of the confirmation date, TransPecos shall provide Debtor's counsel in writing with an itemized accounting showing the total amounts it contends are owed on all three loans (after applying all post-petition payments, fees, plant sale proceeds and costs as provided for above). Debtor shall have 30 days after timely receiving the alleged outstanding balance from TransPecos to file a claim objection with the Court. The final balance as determined by the Court shall be the "Confirmation Balance."

Debtor shall pay the entire Confirmation Balance amortized in 72 monthly payments at 6.5% interest to TransPecos. In the event the new amortization schedule causes the debtor to be required to make payments larger than $30,000 monthly, then the payments shall be set to $30,000 monthly and all principal and interest shall be due in a balloon payment in month 73. The first payment shall be due and payable on the 5th day of the month following the last adequate assurance payment. The last adequate assurance payment shall be made on the fifth day of the month to occur 30 days after the Confirmation Balance is determined by the Court.

**Class 2 Claims:**

The Class 2 claim consists of the impaired secured claim(s) of Leaf Financial ("Leaf") in the amount of approximately $16,000 over a metal detector (the "Collateral"). Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance

(after applying all post-petition payments first to interest and then principal according to the underlying note) and Debtor shall pay the outstanding balance in 60 equal monthly installments of $313 at 6.5% interest. If Leaf does not supply an outstanding balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding balance. Debtor shall maintain insurance on the Collateral. Leaf shall maintain its lien over the Collateral until all plan payments have been made. Once all its plan payments have been made, Leaf shall release its lien and provide Debtor with title to the Collateral. The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month. Debtor shall make payments in the amount of $313.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment. Leaf is impaired and shall vote on the plan.

**Class 3 Claims:**

The Class 3 claim consists of the impaired secured claim(s) of Mercedes Benz Financial ("Mercedes") in the amount of $109,414.95 over a 2015 Freightliner tractor and trailer, and a 2016 Freightliner box truck (the "Collateral"). Pursuant to Debtor's proof of claim, the secured balance is $102,050 ("Secured Balance") and the unsecured balance is $7364.95 ("Unsecured Balance"). The Unsecured Balance shall be paid along with the class 9 General Unsecured Class. The Secured Balance shall be treated as follows: Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments to the Secured Balance and accounting for post petition interest) and Debtor shall pay the outstanding Secured Balance in 60 equal monthly installments of $2000.00 at 6.5% interest. If Mercedes does not supply an outstanding Secured Balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding Secured Balance. Debtor shall maintain insurance on the Collateral. Mercedes shall maintain its lien over the Collateral until all its plan payments have been made. Once all its plan payments have been made, Mercedes shall release its liens and provide Debtor with title to the Collateral. The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month. Debtor shall make payments in the amount of $2000.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment. Mercedes is impaired and shall vote on the plan.

**Class 4 Claims:**

The Class 4 claim consists of the impaired secured claim(s) of Handtmann, Inc. ("Handtmann") in the amount of $55,516.70 over parts and equipment supplied to the plant (the "Collateral"). Pursuant to Debtor's proof of claim, the secured balance is $40,000 ("Secured Balance") and the unsecured balance is $15,516.70 ("Unsecured Balance"). The Unsecured Balance shall be paid along with the class 9 General Unsecured Class. The Secured Balance shall be treated as follows: Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments to the Secured Balance and accounting for post petition interest) and Debtor shall pay the outstanding Secured Balance in 60 equal monthly installments $783.00 at 6.5%

16

interest. If Handtmann does not supply an outstanding Secured Balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding Secured Balance. Debtor shall maintain insurance on the Collateral. Handtmann shall maintain its lien over the Collateral until all its plan payments have been made. Once all its plan payments have been made, Handtmann shall release its liens and provide Debtor with title to the Collateral. The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month. Debtor shall make payments in the amount of $783.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment. Handtmann is impaired and shall vote on the plan.

## Class 5 Claims:

The Class 5 claim consists of the impaired secured claim(s) of Crown Credit Company ("Crown") in the amount of $2,500.00 over a Lift Truck, Battery (the "Collateral"). Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments first to interest and then principal according to the underlying note) and Debtor shall pay the outstanding balance in 60 equal monthly installments of $50.00 at 6.5% interest. If Crown does not supply an outstanding balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding balance. Debtor shall maintain insurance on the Collateral. Crown shall maintain its lien over the Collateral until all plan payments have been made. Once all its plan payments have been made, Crown shall release its lien and provide Debtor with title to the Collateral. The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month. Debtor shall make payments in the amount of $50.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment. Crown is impaired and shall vote on the plan.

## Class 6 Claims:

The Class 6 claim consists of the impaired priority claim(s) of Restaurant Depo in the amount of approximately $9,556.92 for raw materials supplied to Debtor in the 20 days prior to the bankruptcy filing. Debtor shall pay the outstanding balance in 30 equal monthly installments of $319. The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month. Restaurant Depo is impaired and shall vote on the plan.

## Class 7 Claims:

The Class 7 claim consists of the impaired secured claim(s) of Ascentium Capital ("Ascentium") in the amount of $31,241 over a 2017 Bobtail Truck (the "Collateral"). Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments first to interest and then principal according to the underlying note) and Debtor shall pay the outstanding balance in 60 equal monthly installments of $607.00 at 6.5% interest. If Ascentium does not supply an outstanding balance within 20 days of Confirmation, then Debtor may seek Court assistance

to allow the Debtor to obtain said outstanding balance.  Debtor shall maintain insurance on the Collateral.  Ascentium shall maintain its lien over the Collateral until all plan payments have been made.  Once all its plan payments have been made, Ascentium shall release its lien and provide Debtor with title to the Collateral.   The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month.  Debtor shall make payments in the amount of $607.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment.  Ascentium is impaired and shall vote on the plan.

### Class 8 Claims:

The Class 8 claims consists of the unsecured creditor claims that supply a critical need to Papa Grande such that an undue hardship would occur to the Debtor if the creditor stopped providing product, and for, which there is no readily available substitute.   There are approximately $283,405 in critical vendor claims.  Debtor shall pay the critical vendor claims 75% in pro rata quarterly payments of $10,700 per quarter until paid in full.  The first payment shall be made January 1, 2020.  Subsequent payments shall be made the first day of each calendar quarter.  The class 6 claims are impaired and shall vote on the plan.

|  | Claim Amount | POC # |
|---|---|---|
| Chesapeake Spice Company | $58,516 | 2 |
| Hojas Y Especies El Chicano | $30,067 | 5 |
| Hojas Para Tamal La Guadalupana | $18,211 | 5 |
| ViscoFan USA | $32,052 | 8 |
| Packall Packaging Inc. | $36,854 | 27 |
| Hovus | $95,105 |  |
| Sanchez Distributors Inc. | $12,600 |  |
| Total | $283,405 |  |

### Class 9 Claims:

The Class 9 claims consists of the general unsecured claims.  There are approximately $1.9 million in general unsecured claims for Papa Grande and $50,882 for KHRL. Creditors of KHRL are denoted with at "(K)" next to their name. Debtor shall pay general unsecured claims 75% in pro rata quarterly payments of $42,500 per quarter until paid in full.  The first payment shall be made October 1, 2020, and subsequent payments shall be made the first day of each calendar quarter.  The unsecured creditors are listed below with the amount to be paid on each claim unless an objection is filed.  Additionally, there are several creditors that either were scheduled as secured or filed secured claims that have been placed entirely or partially in the general unsecured class because Debtor claims they are wholly or partially unsecured or disputed.  The class 9 claims are impaired and shall vote on the plan.

Debtor may, but is not required to, file a motion to determine secured status or an objection for those creditors, which have been identified below with "(s)" next to the creditor's name.

**Upon receiving the full payment provided for by the Plan of Reorganization, any Class 8 creditor that filed any form of lien, notice of lien, or lien affidavit against the Debtor, including but not limited to UCC and judgement liens, shall file the necessary documents to release such liens.  If the creditor refuses or fails to file such documents within 30 days of final payment and written demand by the Debtor, the Debtor may reopen the bankruptcy to have the court release the lien or file in state court to have the lien released, with all costs and fees associated with the release assessed against the creditor. All Class 8 creditors shall be enjoined from pursuing any Class 8 Debt from a guarantor of said debt for as long as the Debtor complies with the class 8 payment terms.**

| Creditor | Claim | POC# |
|---|---|---|
| ADT LP **filed in 19-50390 | $309,584 | 3 |
| Green Bay Packaging Inc. | $18,104 | 3 |
| Office Depot/Office Max | $2,029 | 4 |
| El Rancho Supermercado **filed in 19-50390 | $30,067 | 5 |
| City Public Service- Electric | $13,586 | 6 |
| Waste Management/San Antonio **filed in 19-50390 | $4,686 | 6 |
| SCHNEIDER INDUSTR | $10,245 | 7 |

| Creditor | Claim | POC# |
|---|---|---|
| IES INC. | | |
| Institute for Environmental Health, Inc. | $2,965 | 10 |
| SSS Ingredients | $2,744 | 11 |
| Coastal Transportation Service | $6,429 | 12 |
| Refrigerated Transport | $32,778 | 13 |
| Colorado Boxed Beef Co. | $8,402 | 15 |
| Labor On Demand, INC | $28,073 | 16 |
| Diagraph Foxjet | $6,258 | 18 |
| South Texas Spice Co | $21,037 | 19 |
| JEAR Logistics | $6,296 | 20 |
| Crown Lift | | 21 |

| | | | | | | |
|---|---|---|---|---|---|---|
| FedEx Corporate Services | $11,226 | 24 | | Capital Merchant Services | $79,420 | |
| Handtman Inc. | $55,517 | 25 | | Capital One Visa 1609 | $30,889 | |
| Synchrony bank | $1,760 | 26 | | Capital One Visa 4236 | $1,374 | |
| PHOENIX FREIGHT | $7,790 | 29 | | CHC Companion | $18,498 | |
| 1 World Sync | $2,638 | | | CHS PFI | $6,364 | |
| A&A Machine Shop | $2,003 | | | Cintas | $6,620 | |
| Accident Fund | $12,235 | | | COASTAL SALES ASSOCIATES, INC. | $55 | |
| Acosta | $25,003 | | | Commerce Technologies, LLC | $13,005 | |
| Advantage Capital (S) | $242,004 | | | Concentra | $139 | |
| Alchemy | $9,353 | | | Coordinated Strategic Alliances | $1,794 | |
| Ameritas Life Insurance | $538 | | | CPS Energy | $13,586 | |
| APG A-perfect Graphic | $478 | | | CTRMA Processing | $83 | |
| AT&T | $0 | | | D & J Food Supply | $9,332 | |
| AT&T | $7,985 | | | Dalton's Club Marketing Serv | $5,688 | |
| B & B SUPPLY | $600 | | | DanHil Containers | $57,255 | |
| Baur Tape and Label | $16,685 | | | David Sanchez DBA | $239 | |
| Big State | $2,396 | | | Daymon Worldwide Inc. | $14,122 | |
| Blanco Rentals | $92 | | | | | |
| Bridge Capital Corp | $1,905 | | | | | |
| Capital Advance Services | $80,413 | | | | | |

| | | |
|---|---|---|
| Delta Printing Co. | $6,438 | |
| Department of the Treasury | $291 | |
| DeRosa Mangold Consulting | $47 | |
| ECHO Global Logistics Inc. | $1,900 | |
| Edict Systems, Inc. | $350 | |
| El Rancho Food Service | $1,420 | |
| El Terrifico LLC | $4,000 | |
| ENGLAND LOGISTICS | $9,505 | |
| E-Z Edge | $1,461 | |
| Felipe Aguilar | $100 | |
| GP Labels | $4,037 | |
| HCTRA-VIOLATIONS | $54 | |
| IEH Laboratories | $875 | |
| Immigrations and Customs Enforcement | $150,000 | |
| Infinium A/C & Refrigerati | $349 | |

| | | |
|---|---|---|
| on | | |
| Integrity Express Logistics | $9,070 | |
| iTrade Network | $3,024 | |
| JBS Packerland | $46,796 | |
| John Lane & Associates | $10,555 | |
| Jules and Associates | $3,083 | |
| Julian Cantu | $2,934 | |
| KANSAS PROTEIN FOODS | $9,144 | |
| LOMA Systems | $6,823 | |
| Managed Prescription Program | $79 | |
| Marcus Food Company | $10,550 | |
| MAREL INC. | $1,081 | |
| Martin & Drought, PC | $0 | |
| McLain Foods, Inc. | $16,600 | |
| Monte R. Barnes FTC Inc. | $2,213 | |
| Murphy USA | $1,613 | |
| Nationwide Insurance | $22,903 | |
| NATWELL SUPPLY CORP. | $200 | |
| Netwel Supply | $317 | |

| | | |
|---|---|---|
| Corp | | |
| North Texas Tollway Authority | $52 | |
| Pacesetter Personal Services | $13,785 | |
| PESA Labeling | $15,910 | |
| Pitney Bowes-5802518 | $37 | |
| Pitney Bowes Purchase Power | $69 | |
| Poly-clip System Corp. | $3,397 | |
| POLYME RALL | $18,235 | |
| Qvest | $55,000 | |
| REBECCA GONZALES | $520 | |
| Resource Solutions LLC | $4,596 | |
| RG Marketing & Consulting | $11,750 | |
| RogCo Inc. | $34,032 | |
| Roto Rooter Services Co. | $2,376 | |
| SAGE Software | $4,788 | |
| San Antonio Armature Works | $1,005 | |

| | | |
|---|---|---|
| SAN ANTONIO MANUFA CTURES ASSOCIA TION | $450 | |
| San Antonio Water Systems | $0 | |
| SanTex Bearing | $78 | |
| Shamrock Meats, Inc | $7,375 | |
| Silliker, Inc. | $345 | |
| Smithfield Foods | $25,640 | |
| SOS Enviro Services, LLC. | $26,027 | |
| SOUTHW ASTE DISPOSA L , LLC. | $9,469 | |
| Sure Good Foods | $17,224 | |
| Synergistic Environme ntal | $1,920 | |
| Sysco - San Antonio | $833 | |
| TAYLOR MADE HOSE | $241 | |
| Texas Packing Company | $20,429 | |
| TIPPER TIE | $55,442 | |
| T-Mobile | $630 | |
| TxTag | $345 | |

| | | |
|---|---|---|
| U S Dept of Agric.-741884616 A Food Safety & Inspctin Ser- | $3,327 | |
| ULINE | $3,666 | |
| Up Hill Marketing | $1,800 | |
| US Department of Agriculture - FSIS | $2,144 | |
| Valero [ACH-1] | $4,623 | |
| Veritiv Corporation | $7,441 | |
| Viskoteepak | $5,139 | |

| | | |
|---|---|---|
| WebTPA | $450 | |
| WERNER LOGISTICS | $8,650 | |
| ZAVALA'S PALLETS | $2,060 | |
| **Monte Barns CPA (K)** | **$5,000.00** | |
| **Genaro Hernandez (K)** | **$15,000.00** | |
| **Martin & Drought, PC (K)** | **$8,882.50** | 7 |
| **Frank Serros (K)** | **$2,000.00** | |
| **Lang Wang (K)** | **$20,000.00** | |

**Class 10 Claims:**

The Class 10 claims consists of the unsecured claims of insiders.  There are approximately $1.57 million in unsecured insider claims.  Debtor shall pay unsecured insider claims 75% in pro rata quarterly payments of $36,800 per quarter until paid in full.   The first payment shall be made the later of October 1, 2026, or when the last general unsecured payment has been made and subsequent payments shall be made the first day of each calendar quarter. The unsecured insider creditors are listed below with the amount to be paid on each claim unless an objection is filed.  The unsecured insiders are impaired but do not vote on the plan.

Andy Garcia           $1,500,000
Kenny Garcia Jr.       $9,974
Natalie Garcia  $59,359

**Class 11 Claims:**

The Class 11 claims consist of Equity Holders Kenny and Hilda Garcia.  Equity Holders shall retain their interest in the Debtor.

4.  Payment of Administrative Claims

All allowed administrative claims will be paid in full on or after the Plan's Effective Date in accordance with the provisions of 11 U.S.C. '1129(a)(9)(A), as agreed to between a particular

administrative claimholder and the Debtors. The Debtors anticipate paying administrative claims from Debtors' business income or post-confirmation cash flow.

5. Feasibility of the Plan.

The Plan is feasible as a result of the income generated from Debtors' business operations and assets. Debtors have provided a proforma in Exhibit B, which demonstrates the Plan's feasibility. Debtor struggled early on in the bankruptcy to establish the level of revenue it could expect. After three months Debtor identified that its off season revenue would be a little under $800,000. Looking at the trends of previous years, Debtor has been able set proformas based off of this new norm and taking into consideration a new large account that Debtor recently obtained.

Debtor has been able to stay over all cash positive at this level by better managing its workforce and becoming much more efficient through the efforts of its new plant manager Mark Myer. Debtor started the bankruptcy with zero finished product inventory, about $31,000 in cash and $337,000 in receivables. As of Week 14, Debtor had $615,000 in receivables, $18,000 in cash, and $60,000 in finished inventory. Debtor is dispatching with its largest Debt through sale or auction and has the cash flow and business to comfortably fund the plan.

6. Claims Allowance Procedure

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated. **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for herein in regard to particular government creditors with shortened objection deadlines.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

Debtors may, but is not required to, file a motion to determine secured status and/or an objection to claim in regard to the following creditors:

**Papa Grande Gourmet Foods, LLC 19-50391**

| Yellowstone | $159,833.00 |
|---|---|
| Advantage Capital Funding | $236,936.80 |

| | |
|---|---|
| Corporation Service Company/Cofactor, LLC | $0 |
| Immigration Customs Enforcement | $150,000 |
| Total | $546,769.80 |

7. Retention of Jurisdiction

The Court will retain jurisdiction as set out in the Plan.

8. Interests Retained by the Debtor

The Debtor is retaining its current ownership interests in its real and personal property, subject to the secured and unsecured claims of its creditors.

## V.  ALTERNATIVES TO THE DEBTORS' PLANS

The alternative to the Debtors' proposed operating plan of reorganization is liquidation. Debtor has such substantial secured and priority debts such that in liquidation, the unsecured creditors would not receive any dividend. If Debtor is permitted to operate, unsecured creditors are projected to receive 75% of their debts over approximately 7 years beginning one year after confirmation of debtor's plan.

## VI.  RISK TO CREDITORS UNDER THE DEBTORS' PLAN

The principal risk that creditors will incur under the Debtors' Plan is that the Debtor could be unable to operate sufficiently to pay its debts. A secondary risk is that the stigma of bankruptcy scares off some of Debtor's customers. Debtor believes this risks are mitigated in that even looking at Debtor's current

## VII.  TAX CONSEQUENCES

Debtor is on an accrual basis accounting system. If the KHRL Plant is sold, there could be depreciation recapture causing increased taxes to Debtor's principals. Debtor directs all parties in interest to consult their own tax advisors regarding their own tax consequences.

## VIII.  LITIGATION

There is one adversary pending between Debtor and TransPecos bank where Debtor has claimed violations of Texas Common Law Debt Collection law and requesting a declaratory judgment that TransPecos did not properly accelerate the note.

## IX.  RELATIONSHIP OF DEBTOR WITH AFFILIATES AND INSIDERS

Kenny Garcia shall continue as president of Papa Grande at a salary of $150,000 and Hilda Garcia its vice president at a salary of $62,400. Mark Myers shall continue as the plant manager at a salary of $90,000. Paul Randles is the current CFO/CPA earning $75.00 per hour. Once completed with restructuring the plants financial processes, Paul Randle likely will be replaced

with an experienced comptroller at approximately $40.00 per hour.  The following family members shall continue working for the Debtor at salaries 20% less than they were at the time the case was filed:

| | |
|---|---|
| Irma Martinez | 16,640 |
| Natalie Villagomez | 78,931 |
| Andy Garcia | 30,720 |
| Gregg Smothers | 48,000 |

## X.    PREFERENTIAL OR VOIDABLE TRANSFERS

None.

## XI.    SUMMARY OF SIGNIFICANT ORDERS ENTERED

Many orders were entered in these cases.   A list of the "significant" orders entered include the following; however, parties should consult the court's docket for to review all orders entered:

1)  Order entered limiting notice.
2)  Order entered Jointly Administer the Cases under Case 19-50390.
3)  Orders entered in the Papa Grande cases authorizing the use of cash collateral.
4)  Order entered employing a state tax professional.

## XII.    MISCELLANEOUS DISCLOSURES

A.    Modification of the Plan.

The Debtors may propose amendments or modifications to their Plan at any time prior to the date of the entry of the Order Confirming Plan, with leave of the Court, and upon proper notice to parties in interest. After the date of the Order Confirming Plan, Debtor may, with approval of the Court so long as it does not materially or adversely affect the interests of creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Order Confirming Plan in such manner as may be necessary to carry out the purpose and effect of this Plan.

B.    Effect of Confirmation of the Plan.

Legally Binding Effect.   The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan.   On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any  Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and temporarily enjoined from asserting any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors and any guaranty claims as long as Debtors complies with its obligations under this Plan.

Limited Discharge of Debtors and Injunction. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtors is permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or its property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or its property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estate with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estate except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

The Debtors is discharged from any debt which arose prior to confirmation, whether as maker or guarantor, except as provided for in the Plan, Order Confirming Plan or the Bankruptcy Code, upon completing the terms and payments of the Plan of Reorganization. Debtors will not be discharged from any debt except from discharge under Section 523 of the Code, except as provided in Rule 4007(C) of the Federal Rules of Bankruptcy Procedure. Debtors shall continue filing post-confirmation quarterly reports and pay UST fees until the case is closed, dismissed or converted.

Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.C.

Executory Contracts.

The Debtors are rejecting all prepetition executory contracts not specifically assumed in the Debtors' respective plan of reorganization. **INTERESTED PARITIES SHOULD CONSULT THE PLAN OF REORGANIZATION FOR EACH DEBTOR TO DETERMINE WHETHER A LEASE OR EXECUTORY CONTRACT IS REJECTED OR ASSUMED. IF A LEASE OR CONTRACT IS REJECTED, THE AFFECTED PARTY SHALL FILE ALL CLAIMS FOR REJECTION DAMAGES OR AN AMENDMENT TO A PREVIOUSLY FILED CLAIM NO LATER THAN THE 30TH DAY FOLLOWING THE EFFECTIVE DATE OF THE PLAN; OTHERWISE THE CLAIM SHALL BE BARRED.**

Debtors believe all the organizational agreements with is business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.

D.    Default

Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to two (2) notices of default for each calendar year. On the third ($^{rd}$) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

# XIII.   CONCLUSION

The Debtors submit this Disclosure Statement. The information contained herein has been compiled in good faith and in accordance with the provisions of 11 UCC §§ 101, *et. seq*. This Disclosure Statement is presented for consideration by creditors and other parties in interest and as the sole source of information furnished by the Debtors, or to be furnished by the Debtors, in solicitation of acceptance of Debtors' Plan of Reorganization.

**The Debtors recommend that the Plan of Reorganization be approved.   An operating plan is in the best interest of all creditors, Debtors and parties-in-interest, therefore, all Creditors and Interest Holders are urged to vote to accept the Plan.**

# XIV. ATTACHMENTS AND EXHIBITS

| | |
|---|---|
| Exhibit "A1-A2" | Most Recently Filed Monthly Operating Reports. |
| Exhibit "B" | Schedule of Future Payments and Sources of Funds – the Budget |
| Exhibit "C1-C2" | Property |
| Exhibit "D" | Proposed Plans of Reorganization |
| Exhibit "E" | Liquidation Analysis |

DATED: June 10, 2019

BY: */s/ Kenneth Garcia* _____ ____
Name: Kenneth Garcia, President

THE SMEBERG LAW FIRM, PLLC

BY:/s/ Ronald J. Smeberg_____
      Ronald J. Smeberg
      SBN: 24033967
      THE SMEBERG LAW FIRM, PLLC
      2010 W Kings Hwy
      San Antonio, Texas 78201
      Tel: (210) 695-6684
      Fax: (210) 598-7357
      ATTORNEYS FOR DEBTORS

**MOR-1**

**UNITED STATES BANKRUPTCY COURT**

CASE NAME: _Papa Grande Gourmet Foods, LLC_
CASE NUMBER: _19-50390-rbk_
PROPOSED PLAN DATE: _06/22/19_

PETITION DATE: _2/25/19_
DISTRICT OF TEXAS: _Western_
DIVISION: _San Antonio_

## MONTHLY OPERATING REPORT SUMMARY FOR MONTH                    YEAR

| MONTH | 2/28/2019 | 3/31/2019 | 4/30/2019 | | | |
|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 182,987.00 | 780,713.40 | 770,080.55 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT; DEPREC./TAX (MOR-6) | 41,873.72 | 104,482.75 | 50,764.74 | 0.00 | 0.00 | 0.00 |
| NET INCOME (LOSS) (MOR-6) | 41,873.72 | 104,482.75 | 50,764.74 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO INSIDERS (MOR-9) | 11,613.53 | 49,387.34 | 30,015.87 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-7) | 69,036.50 | 778,950.19 | 607,077.39 | 0.00 | 0.00 | 0.00 |

\*\*\*The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee\*\*\*

| REQUIRED INSURANCE MAINTAINED | | |
|---|---|---|
| AS OF SIGNATURE DATE | EXP. | |
| | DATE | |
| CASUALTY | YES (X) NO ( ) | ___-___-___ |
| LIABILITY | YES (X) NO ( ) | ___-___-___ |
| VEHICLE | YES (X) NO ( ) | ___-___-___ |
| WORKER'S | YES (X) NO ( ) | ___-___-___ |
| OTHER | YES ( ) NO ( ) | ___-___-___ |

CIRCLE ONE

Are all accounts receivable being collected within terms?   Yes   No X
Are all post-petition liabilities, including taxes, being paid within terms?   Yes X   No
Have any pre-petition liabilities been paid?   Yes   No
If so, describe
Are all funds received being deposited into DIP bank accounts?   Yes   No
Were any assets disposed of outside the normal course of business?   Yes   No X
If so, describe
Are all U.S. Trustee Quarterly Fee Payments current?   Yes   No
What is the status of your Plan of Reorganization?

ATTORNEY NAME: _____
FIRM NAME: _____
ADDRESS: _____
CITY, STATE, ZIP: _____
TELEPHONE/FAX: _____

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED X _____   TITLE: _President_
(ORIGINAL SIGNATURE)
_KENNY GARCIA_                              _5-30-19_
(PRINT NAME OF SIGNATORY)                   DATE   Revised 07/01/98

**MOR-1**

CASE NAME: _____0_____
CASE NUMBER: _____0_____

# COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| | 2/25/2019 0:00 | 2/28/2019 0:00 | 3/31/2019 0:00 | 4/30/2019 0:00 | | | |
| CURRENT ASSETS | | | | | | | |
| Cash | 31,468.00 | 172,402.72 | 144,711.53 | 44,382.76 | | | |
| Accounts Receivable, Net | 395,175.00 | 368,181.00 | 448,540.37 | 617,224.07 | | | |
| Inventory: Lower of Cost or Market | 135,102.00 | 63,035.00 | 245,578.57 | 174,092.38 | | | |
| Prepaid Expenses | | | | | | | |
| Investments | | | | | | | |
| Other | | | | | | | |
| TOTAL CURRENT ASSETS | 561,745.00 | 603,618.72 | 838,830.47 | 835,699.21 | 0.00 | 0.00 | 0.00 |
| PROPERTY, PLANT & EQUIP. @ COST | 2,581,840.00 | 2,581,840.00 | 2,581,840.00 | 2,581,840.00 | | | |
| Less Accumulated Depreciation | | | | | | | |
| NET BOOK VALUE OF PP & E | 2,581,840.00 | 2,581,840.00 | 2,581,840.00 | 2,581,840.00 | 0.00 | 0.00 | 0.00 |
| OTHER ASSETS | | | | | | | |
| 1. Tax Deposits | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | |
| 3. Utility/Property Tax Deposits | | | 8,500.00 | 13,500.00 | | | |
| 4. Goodwill | 1,384,158.00 | 1,384,158.00 | 1,384,158.00 | 1,384,158.00 | | | |
| TOTAL ASSETS | $4,527,743.00 | $4,569,616.72 | $4,813,328.47 | $4,815,197.21 | $0.00 | $0.00 | $0.00 |

* Per Schedules and Statement of Affairs

**MOR-2**

*Revised 07/01/98*

CASE NAME: 0
CASE NUMBER: 0

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* 2/25/2019 0:00 | MONTH 2/28/2019 0:00 | MONTH 3/31/2019 0:00 | MONTH 4/30/2019 0:00 | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | 0.00 | 139,229.00 | 90,333.00 | | | |
| PRE-PETITION LIABILITIES | | | | | | | |
| Notes Payable - Secured | 2,007,733.00 | 2,007,733.00 | 2,007,733.00 | 2,007,733.00 | | | |
| Priority Debt | 92,189.26 | 92,189.26 | 92,189.26 | 92,189.26 | | | |
| Federal Income Tax | | - | 0.00 | | | | |
| FICA/Withholding | 100,427.89 | 100,427.89 | 100,427.89 | 100,427.89 | | | |
| Unsecured Debt ** | 4,017,511.00 | 4,017,511.00 | 4,017,511.00 | 4,017,511.00 | | | |
| Other | | | | 50,420.00 | | | |
| TOTAL PRE-PETITION LIABILITIES | 6,217,861.15 | 6,217,861.15 | 6,217,861.15 | 6,268,281.15 | 0.00 | 0.00 | 0.00 |
| **TOTAL LIABILITIES** | 6,217,861.15 | 6,217,861.15 | 6,357,090.15 | 6,358,614.15 | 0.00 | 0.00 | 0.00 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | |
| PREFERRED STOCK | | | | | | | |
| COMMON STOCK | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | |
| RETAINED EARNINGS: Filing Date | -1,690,118.15 | -1,690,118.15 | -1,690,118.15 | -1,690,118.15 | | | |
| RETAINED EARNINGS: Post Filing Date | | 41,873.72 | 146,356.47 | 146,701.21 | 146,701.21 | 146,701.21 | 146,701.21 |
| TOTAL OWNER'S EQUITY (NET WORTH) | -1,690,118.15 | -1,648,244.43 | -1,543,761.68 | -1,543,416.94 | 146,701.21 | 146,701.21 | 146,701.21 |
| **TOTAL LIABILITIES & OWNERS EQUITY** | $4,527,743.00 | $4,569,616.72 | $4,813,328.47 | $4,815,197.21 | $146,701.21 | $146,701.21 | $146,701.21 |

MOR-3

* Per Schedules and Statement of Affairs
** $2,309,000 is insider debt.

Revised 07/01/98

**CASE NAME:** 0
**CASE NUMBER:** 0

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH 2/28/2019 | MONTH 3/31/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | | 138,081.00 | 90,333.00 | | | |
| TAX PAYABLE | | | | | | |
| Federal Payroll Taxes | | | | | | |
| State Payroll Taxes | | | | | | |
| Ad Valorem Taxes | | | | | | |
| Other Taxes | | | | | | |
| TOTAL TAXES PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | |
| 1. Operating Production costs | | 528.00 | | | | |
| 2. Humana Health | | 223.00 | | | | |
| 3. SAWS Annual Fire Cert | | 397.00 | | | | |
| **TOTAL POST-PETITION LIABILITIES (MOR-3)** | $0.00 | $139,229.00 | $90,333.00 | $0.00 | $0.00 | $0.00 |

*Payment requires Court Approval

**MOR-4**

*Revised 07/01/98*

CASE NAME: 0
CASE NUMBER: 0

## AGING OF POST-PETITION LIABILITIES
**MONTH** March

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | OTHER |
|------|-------|----------------|---------------|-------------|-------------------------|-------|
| 0-30 | 90,333.00 | 90,333.00 | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $90,333.00 | $90,333.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## AGING OF ACCOUNTS RECEIVABLE

| MONTH | 2/28/2019 | 3/31/2019 | 4/30/2019 | | | |
|-------|-----------|-----------|-----------|--|--|--|
| 0-30 DAYS | 287,098.17 | 360,865.30 | 549,725.73 | | | |
| 31-60 DAYS | 67,365.56 | 40,342.48 | 12,508.13 | | | |
| 61-90 DAYS | 20,060.32 | 42,013.65 | 42,342.62 | | | |
| 91+ DAYS | 10,296.16 | 5,319.12 | 12,647.59 | | | |
| TOTAL | $384,820.21 | $448,540.55 | $617,224.07 | $0.00 | $0.00 | $0.00 |

**MOR-5**

Note: Federal payroll taxes are paid weekly therefore no accrual necessary.

Note 2: Accounts Receivable adjusted in May for prepetition receivables not removed from aging or uncollectable. Balances in May MOR will reflect these adjustments.

*Revised 07/01/98*

CASE NAME: _____ 0
CASE NUMBER: _____ 0

## STATEMENT OF INCOME (LOSS)

| | MONTH 2/28/2019 | MONTH 3/30/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | 182,987.00 | 780,713.40 | 770,080.55 | | | | 1,733,780.95 |
| TOTAL COST OF REVENUES | 123,916.00 | 532,265.39 | 507,435.15 | | | | 1,163,616.54 |
| GROSS PROFIT | 59,071.00 | 248,448.01 | 262,645.40 | 0.00 | 0.00 | 0.00 | 570,164.41 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | | | | | | | 0.00 |
| General & Administrative | 4,798.28 | 49,300.83 | 133,767.91 | | | | 187,867.02 |
| Insiders Compensation | 11,614.00 | 49,387.00 | 30,015.87 | | | | 91,016.87 |
| Professional Fees | | | 50,420.00 | | | | 50,420.00 |
| Other - Occupancy | 785.00 | 30,686.36 | 42,060.36 | | | | 73,531.72 |
| Other | | 14,591.07 | 6,036.53 | | | | 20,627.60 |
| TOTAL OPERATING EXPENSES | 17,197.28 | 143,965.26 | 262,300.67 | 0.00 | 0.00 | 0.00 | 423,463.21 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | 41,873.72 | 104,482.75 | 344.74 | 0.00 | 0.00 | 0.00 | 146,701.21 |
| INTEREST EXPENSE | | | | | | | 0.00 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | 0.00 |
| OTHER ITEMS** | | | | | | | 0.00 |
| TOTAL INT, DEPR & OTHER ITEMS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| NET INCOME BEFORE TAXES | 41,873.72 | 104,482.75 | 344.74 | 0.00 | 0.00 | 0.00 | 146,701.21 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS) (MOR-1) | $41,873.72 | $104,482.75 | $344.74 | $0.00 | $0.00 | $0.00 | $146,701.21 |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

*   Footnote Mandatory.

* * Unusual and or infrequent item(s) outside the ordinary course of business requires footnote.

**MOR-6**

Revised 07/01/98

CASE NAME: _____0_____

CASE NUMBER: _____0_____

3/8-3/29

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 2/28/2019 | MONTH 3/31/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $31,467.99 | $172,402.49 | $144,710.93 | $44,382.76 | $44,382.76 | $44,382.76 | $31,467.99 |
| **RECEIPTS:** | | | | | | | |
| 2. CASH SALES | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 209,971.00 | 751,258.63 | 506,749.22 | | | | 1,467,978.85 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | 0.00 |
| 6. OTHER (attach list) | | | | | | | 0.00 |
| TOTAL RECEIPTS** | 209,971.00 | 751,258.63 | 506,749.22 | 0.00 | 0.00 | 0.00 | 1,467,978.85 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | |
| 7. NET PAYROLL | 53,311.00 | 218,781.16 | 235,377.70 | | | | 507,469.86 |
| 8. PAYROLL TAXES PAID | 4,463.00 | 15,524.24 | 17,233.66 | | | | 37,220.90 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | | 0.00 | 898.00 | | | | 898.00 |
| 11. UTILITIES & TELEPHONE | | 3,829.50 | 11,712.00 | | | | 15,541.50 |
| 12. INSURANCE | | 26,974.61 | 31,518.00 | | | | 58,492.61 |
| 13. INVENTORY PURCHASES | 10,477.50 | 458,183.51 | 211,171.03 | | | | 679,832.04 |
| 14. VEHICLE EXPENSES | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | 2,423.68 | 4,768.00 | | | | 7,191.68 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | 5,783.81 | 5,241.00 | | | | 11,024.81 |
| 17. ADMINISTRATIVE & SELLING | | | 1,450.00 | | | | 1,450.00 |
| 18. OTHER (attach list) | 785.00 | 38,949.68 | 53,883.00 | | | | 93,617.68 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 69,036.50 | 770,450.19 | 573,252.39 | 0.00 | 0.00 | 0.00 | 1,412,739.08 |
| 19. PROFESSIONAL FEES | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | | 325.00 | | | | 325.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | 8,500.00 | 33,500.00 | | | | 42,000.00 |
| TOTAL DISBURSEMENTS** | 69,036.50 | 778,950.19 | 607,077.39 | 0.00 | 0.00 | 0.00 | 1,455,064.08 |
| 22. NET CASH FLOW | 140,934.50 | -27,691.56 | -100,328.17 | 0.00 | 0.00 | 0.00 | 12,914.77 |
| 23. CASH - END OF MONTH (MOR-2) | $172,402.49 | $144,710.93 | $44,382.76 | $44,382.76 | $44,382.76 | $44,382.76 | $44,382.76 |

\* Applies to Individual debtors only

**MOR-7**

\*\*Numbers for the current month should balance (match)

RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

*Revised 07/01/98*

Papa Grande Gourmet Foods dba Garcia Foods
 MOR 7 List

Other
| | |
|---|---|
| Orleans | 25,000.00 |
| Pest Control | 313.00 |
| Qvest | 19,545.00 |
| Knight Hawk Sec | 3,140.00 |
| Freight | 4,617.00 |
| Cintas | 1,268.00 |
| | $53,883.00 |

**Deposits**
| | |
|---|---|
| SAWS Deposit | 3,500.00 |
| Cash Collateral | 25,000.00 |
| CPS Deposit | 5,000.00 |
| | $33,500.00 |

CASE NAME: 0
CASE NUMBER: 0

## CASH ACCOUNT RECONCILIATION
### MONTH OF April

| BANK NAME | Trans Pecos | Trans Pecos | Trans Pecos | Trans Pecos | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | 823 | 113 | 731 | 106 | |
| *ACCOUNT TYPE* | *OPERATING* | *PAYROLL* | | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | 52,554.46 | 23,333.27 | 0.00 | 19,500.00 | $95,387.73 |
| DEPOSITS IN TRANSIT | | | | | $0.00 |
| OUTSTANDING CHECKS | 27,671.70 | 23,333.27 | | | $51,004.97 |
| ADJUSTED BANK BALANCE | $24,882.76 | $0.00 | $0.00 | $19,500.00 | $44,382.76 |
| BEGINNING CASH - PER BOOKS | 44,555.78 | 20,299.04 | 79,856.11 | | $144,710.93 |
| RECEIPTS* | 383,423.93 | | 123,325.29 | | $506,749.22 |
| TRANSFERS BETWEEN ACCOUNTS | -54,298.90 | 227,000.00 | -192,201.10 | 19,500.00 | $0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 348,798.05 | 247,299.04 | 10,980.30 | | $607,077.39 |
| ENDING CASH - PER BOOKS | $24,882.76 | $0.00 | $0.00 | $19,500.00 | $44,382.76 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7
NOTE: Due to early recording of actual adjustments to disbursements
were not recorded on the budget to actual reconciliation.
The Bank reconciliations have very likely never been done and
therefore further research is required.

*Revised 07/01/98*

CASE NAME:      0

CASE NUMBER:      0

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.)  (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH 2/28/2019 | MONTH 3/31/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| 1.  Kenny Garcia Sr | 5,465.12 | 15,576.89 | 8,653.83 | | | |
| 2.  Hilda Garcia | | 6,500.00 | | | | |
| 3.  Irma Martinez | 400.00 | 1,600.00 | 1,200.00 | | | |
| 4.  Kenny Garcia Jr | 1,442.91 | 5,771.64 | 4,328.73 | | | |
| 5   Laura Smothers | | 3,516.81 | 3,516.81 | | | |
| 6  Natalie Villagomez | 2,055.50 | 8,222.00 | 6,166.50 | | | |
| 7  Andy Garcia | 1,000.00 | 3,200.00 | 2,400.00 | | | |
| 8  Gregg Smothers | 1,250.00 | 5,000.00 | 3,750.00 | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| TOTAL INSIDERS  (MOR-1) | $11,613.53 | $49,387.34 | $30,015.87 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL PROFESSIONALS    (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-9**

*Revised 07/01/98*

**MOR-1**

**UNITED STATES BANKRUPTCY COURT**

CASE NAME: KHRL Group, LLC
CASE NUMBER: 19-50390-rbk
PROPOSED PLAN DATE: 6/22/19

PETITION DATE: 2/25/19
DISTRICT OF TEXAS: Western
DIVISION: San Antonio

## MONTHLY OPERATING REPORT SUMMARY  FOR MONTH                        YEAR

| MONTH | 2/28/2019 | 3/31/2019 | 4/30/2019 | | | |
|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 0.00 | 25,000.00 | 25,000.00 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT; DEPREC./TAX (MOR-6) | 0.00 | 25,000.00 | 25,000.00 | 0.00 | 0.00 | 0.00 |
| NET INCOME (LOSS) (MOR-6) | 0.00 | 25,000.00 | 25,000.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-7) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

**REQUIRED INSURANCE MAINTAINED**
**AS OF SIGNATURE DATE**                    EXP. DATE

| | | |
|---|---|---|
| CASUALTY | YES (X) NO ( ) | ___-___-___ |
| LIABILITY | YES (X) NO ( ) | ___-___-___ |
| VEHICLE | YES (X) NO ( ) | ___-___-___ |
| WORKER'S | YES (X) NO ( ) | ___-___-___ |
| OTHER | YES ( ) NO ( ) | ___-___-___ |

CIRCLE ONE

Are all accounts receivable being collected within terms?     Yes   No X
Are all post-petition liabilities, including taxes, being paid within terms?     Yes   No X
Have any pre-petition liabilities been paid?     Yes   No
  If so, describe
Are all funds received being deposited into DIP bank accounts?     Yes   No
Were any assets disposed of outside the normal course of business?     Yes   No X
  If so, describe
Are all U.S. Trustee Quarterly Fee Payments current?     Yes   No
What is the status of your Plan of Reorganization?

ATTORNEY NAME: _____
FIRM NAME: _____
ADDRESS: _____

CITY, STATE, ZIP: _____
TELEPHONE/FAX: _____

**MOR-1**

*I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.*

SIGNED X _____  TITLE: President
(ORIGINAL SIGNATURE)
KENNY GARCIA                    5-30-19
(PRINT NAME OF SIGNATORY)          DATE     Revised 07/01/98

**CASE NAME:** _____0_____
**CASE NUMBER:** _____0_____

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* 2/25/2019 0:00 | MONTH 2/28/2019 0:00 | MONTH 3/31/2019 0:00 | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | |
| Cash | | | | | | | |
| Accounts Receivable, Net | | | 25,000.00 | 50,000.00 | | | |
| Inventory: Lower of Cost or Market | | | | | | | |
| Prepaid Expenses | | | | | | | |
| Investments | | | | | | | |
| Other | | | | | | | |
| TOTAL CURRENT ASSETS | 0.00 | 0.00 | 25,000.00 | 50,000.00 | 0.00 | 0.00 | 0.00 |
| PROPERTY, PLANT & EQUIP. @ COST | 5,400,000.00 | 5,400,000.00 | 5,400,000.00 | 5,400,000.00 | | | |
| Less Accumulated Depreciation | | | | | | | |
| NET BOOK VALUE OF PP & E | 5,400,000.00 | 5,400,000.00 | 5,400,000.00 | 5,400,000.00 | 0.00 | 0.00 | 0.00 |
| OTHER ASSETS | | | | | | | |
| 1. Tax Deposits | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | |
| 3. Electric Deposit | | | | | | | |
| 4. Goodwill | | | | | | | |
| **TOTAL ASSETS** | $5,400,000.00 | $5,400,000.00 | $5,425,000.00 | $5,450,000.00 | $0.00 | $0.00 | $0.00 |

* Per Schedules and Statement of Affairs

**MOR-2**

*Revised 07/01/98*

CASE NAME: 0
CASE NUMBER: 0

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* 2/25/2019 0:00 | MONTH 2/28/2019 0:00 | MONTH 3/31/2019 0:00 | MONTH 4/30/2019 0:00 | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| LIABILITIES | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | | | |
| PRE-PETITION LIABILITIES | | | | | | | |
| Notes Payable - Secured | 4,500,000.00 | 4,500,000.00 | 4,500,000.00 | 4,500,000.00 | | | |
| Priority Debt * | 126,639.00 | 126,639.00 | 126,639.00 | 126,639.00 | | | |
| Federal Income Tax | | - | 0.00 | | | | |
| FICA/Withholding | | | | | | | |
| Unsecured Debt | 42,000.00 | 42,000.00 | 42,000.00 | 42,000.00 | | | |
| Other | | | | | | | |
| TOTAL PRE-PETITION LIABILITIES | 4,668,639.00 | 4,668,639.00 | 4,668,639.00 | 4,668,639.00 | 0.00 | 0.00 | 0.00 |
| TOTAL LIABILITIES | 4,668,639.00 | 4,668,639.00 | 4,668,639.00 | 4,668,639.00 | 0.00 | 0.00 | 0.00 |
| OWNER'S EQUITY (DEFICIT) | | | | | | | |
| PREFERRED STOCK | | | | | | | |
| COMMON STOCK | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | |
| RETAINED EARNINGS: Filing Date ** | 731,361.00 | 731,361.00 | 731,361.00 | 731,361.00 | | | |
| RETAINED EARNINGS: Post Filing Date | | | 25,000.00 | 50,000.00 | | | |
| TOTAL OWNER'S EQUITY (NET WORTH) | 731,361.00 | 731,361.00 | 756,361.00 | 781,361.00 | 0.00 | 0.00 | 0.00 |
| TOTAL LIABILITIES & OWNERS EQUITY | $5,400,000.00 | $5,400,000.00 | $5,425,000.00 | $5,450,000.00 | $0.00 | $0.00 | $0.00 |

* Per Schedules and Statement of Affairs

**MOR-3**

*Revised 07/01/98*

* Property Tax
** Retained Earnings adjusted to reflect 2/25/19 filing
amounts submitted in filing documents. Actual
amounts from previous periods unknown at this time.

**CASE NAME:** _____ 0
**CASE NUMBER:** _____ 0

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH 3/31/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | | | | | | |
| TAX PAYABLE | | | | | | |
| Federal Payroll Taxes | | | | | | |
| State Payroll Taxes | | | | | | |
| Ad Valorem Taxes ** | | | | | | |
| Other Taxes | | | | | | |
| TOTAL TAXES PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | |
| OTHER  ACCRUED LIABILITIES | | | | | | |
| 1.  Operating Production costs | | | | | | |
| 2.  Humana Health | | | | | | |
| 3.  SAWS Annual Fire Cert | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

*Payment requires Court Approval          ** Accrued Property Taxes

**MOR-4**

*Revised 07/01/98*

**CASE NAME:** _____ 0
**CASE NUMBER:** _____ 0

### AGING OF POST-PETITION LIABILITIES
**MONTH**               April _____

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | OTHER |
|------|-------|----------------|---------------|-------------|-------------------------|-------|
| 0-30 | 0.00 | | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

### AGING OF ACCOUNTS RECEIVABLE

| MONTH | | | | | | |
|-------|---|---|---|---|---|---|
| 0-30 DAYS | | | | | | |
| 31-60 DAYS | | | | | | |
| 61-90 DAYS | | | | | | |
| 91+ DAYS | | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-5**                                                        *Revised 07/01/98*

CASE NAME:       0
CASE NUMBER:     0

## STATEMENT OF INCOME (LOSS)

| | MONTH 2/28/2019 | MONTH 3/30/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | | 25,000.00 | 25,000.00 | | | | 50,000.00 |
| TOTAL COST OF REVENUES | | | | | | | 0.00 |
| GROSS PROFIT | 0.00 | 25,000.00 | 25,000.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| OPERATING EXPENSES: | | | | | | | |
| Selling & Marketing | | | | | | | 0.00 |
| General & Administrative | | | | | | | 0.00 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | | | | | | | 0.00 |
| Other - Occupancy | | | | | | | 0.00 |
| Other | | | | | | | 0.00 |
| TOTAL OPERATING EXPENSES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | 0.00 | 25,000.00 | 25,000.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| INTEREST EXPENSE | | | | | | | 0.00 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | 0.00 |
| OTHER ITEMS** | | | | | | | 0.00 |
| TOTAL INT, DEPR & OTHER ITEMS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| NET INCOME BEFORE TAXES | 0.00 | 25,000.00 | 25,000.00 | 0.00 | 0.00 | 0.00 | 50,000.00 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS) (MOR-1) | $0.00 | $25,000.00 | $25,000.00 | $0.00 | $0.00 | $0.00 | $50,000.00 |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

* *Footnote Mandatory.*

* * *Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.*

**MOR-6**

*Revised 07/01/98*

**Exhibit A2 - 7 of 9**

CASE NAME: _____ 0 _____

CASE NUMBER: _____ 0 _____

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 2/28/2019 | MONTH 3/30/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| RECEIPTS: | | | | | | | |
| 2. CASH SALES | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | 0.00 |
| 6. OTHER (attach list) | | | | | | | 0.00 |
| TOTAL RECEIPTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | 0.00 |
| DISBURSEMENTS: | | | | | | | |
| 7. NET PAYROLL | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | | | | | | 0.00 |
| 12. INSURANCE | | | | | | | 0.00 |
| 13. INVENTORY PURCHASES | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | 0.00 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | 0.00 |
| 18. OTHER (attach list) | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 19. PROFESSIONAL FEES | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | | | | | | 0.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 22. NET CASH FLOW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

\* Applies to Individual debtors only

**MOR-7**

\*\*Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

*Revised 07/01/98*

**CASE NAME:** 0
**CASE NUMBER:** 0

## CASH ACCOUNT RECONCILIATION
### MONTH OF April

| BANK NAME | Trans Pecos | Trans Pecos | | Trans Pecos | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | | | | | |
| *ACCOUNT TYPE* | *OPERATING* | *PAYROLL* | *TAX* | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | | | | | $0.00 |
| DEPOSITS IN TRANSIT | | | | | $0.00 |
| OUTSTANDING CHECKS | | | | | $0.00 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BEGINNING CASH - PER BOOKS | | | | | $0.00 |
| RECEIPTS* | | | | | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | | | | | $0.00 |
| ENDING CASH - PER BOOKS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7
NOTE: No Bank Statements Available.

*Revised 07/01/98*

CASE NAME: _____ 0 _____
CASE NUMBER: _____ 0 _____

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH 2/28/2019 | MONTH 3/31/2019 | MONTH 4/30/2019 | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL PROFESSIONALS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-9**

*Revised 07/01/98*

**Papa Grande Gourmet Foods, LLC  dba Garcia Foods**
**5 Year Projected Results**
**For the Year Starting October 1, 2019**

| | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 |
|---|---|---|---|---|---|---|---|---|
| Revenue | 182,987 | 780,713 | 770,080 | 775,024 | 767,250 | 791,775 | 925,018 | 986,269 |
| Equity Contribution | | | | | | | | |
| **TOTAL Revenue** | **182,987** | **780,713** | **770,080** | **775,024** | **767,250** | **791,775** | **925,018** | **986,269** |
| **COGS** | | | | | | | | |
| MATERIAL PURCHASES | | | | 395,262 | 391,298 | 409,348 | 492,572 | 525,188 |
| PAYROLL PRODUCTION | | | | 109,654 | 106,364 | 107,428 | 112,799 | 119,939 |
| **TOTAL COGS** | 123,916 | 532,265 | 507,435 | 504,916 | 497,662 | 516,776 | 605,371 | 645,127 |
| **GROSS MARGIN $** | 59,071 | 248,448 | 262,645 | 270,108 | 269,588 | 274,999 | 319,646 | 341,141 |
| **GROSS MARGIN %** | 32.28% | 31.82% | 34.11% | 34.85% | 35.14% | 34.73% | 34.56% | 34.59% |
| **EXPENSES** | | | | | | | | |
| BANK FEES | | | | | 1,300 | 1,300 | 1,300 | 1,300 |
| PAYROLL-EMPLOYEES | | | | | 59,017 | 59,017 | 64,434 | 68,600 |
| PAYROLL-EXECUTIVES | | | | | 42,506 | 35,618 | 35,618 | 35,618 |
| PAYROLL TAXES | | | | | 15,903 | 15,458 | 16,283 | 17,148 |
| HEALTH INSURANCE CENTURY | | | | | 3,308 | 3,329 | 3,545 | 3,771 |
| HEALTH INSURANCE HUMANA | | | | | 10,370 | 10,370 | 10,370 | 10,370 |
| LIFE INSURANCE MASS MUTUAL | | | | | 1,082 | 1,082 | 1,082 | 1,082 |
| Professional Fees | | | | | | | | |
| Delivery Fuel | | | | | 4,105 | 4,236 | 4,949 | 5,277 |
| PAYROLL FEES PROLIANT | | | | | 1,465 | 1,465 | 1,465 | 1,465 |
| SAWS | | | | | 2,916 | 3,009 | 3,515 | 3,748 |
| CPS (GAS) | | | | | 3,299 | 3,405 | 3,978 | 4,241 |
| CPS (ELECTRIC) | | | | | 9,974 | 9,897 | 10,175 | 10,849 |
| PEST CONTROL | | | | | 420 | 420 | 420 | 420 |
| ATT LANDLINES AND MOBILE & Internet | | | | | 2,400 | 2,400 | 2,400 | 2,400 |
| PURCHASING SPS COMMERCE | | | | | 460 | 460 | 460 | 460 |
| WASTE MANAGEMENT | | | | | 3,453 | 3,563 | 4,163 | 4,438 |
| INSURANCE COMMERCIAL NATIONWIDE | | | | | 9,625 | 9,625 | 9,625 | 9,625 |
| WEB TPA/EDI | | | | | 225 | 225 | 225 | 225 |
| RENT | | | | | 0 | 0 | 0 | 0 |
| Qvest | | | | | 19,548 | 19,548 | 19,548 | 19,548 |
| Night Hawk Security | | | | | 3,140 | 3,140 | 3,140 | 3,140 |
| Freight | | | | | 4,987 | 4,751 | 5,550 | 5,918 |
| Tmobil | | | | | 400 | 400 | 400 | 400 |
| Cintas | | | | | 1,861 | 1,880 | 1,974 | 2,099 |
| Office supply | | | | | 700 | 700 | 700 | 700 |
| Building and Equip Maintenance | | | | | | 2,500 | 10,000 | 50,000 |
| TOTAL OPERATING EXPENSES | 17,197 | 143,965 | 262,301 | 208,202 | 202,464 | 197,797 | 215,317 | 262,841 |
| | | | | | | | | |
| **NOI - NET OPERATING INCOME** | **41,874** | **104,483** | **344** | **61,906** | **67,124** | **77,203** | **104,329** | **78,300** |
| IRS Payments $103,177.89 @ 6% 4.5 years | | | | | | | 0 | 0 |
| BANKRUPTCY QUARTERLY FEES | | | 325 | 4,875 | | 16,850 | | 0 |
| Class 1 TransPecos Eq & LOC | | | | | | | | |
| LEASE PAYMENTS/VEHICLE/EQUIPMENT | | | | 5,060 | 3,083 | 3,083 | 3,083 | 3,083 |
| NOTES PAYMENTS/VEHICLE/EQUIPMENT | | | | 6,166 | 2,875 | 2,875 | 2,875 | 2,875 |
| Personal Property Tax Escrow 2019 | | | | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 |
| Personal Property Tax Escrow pst | | | | | | | | |
| Boiler Lease | | | | | | 400 | 400 | 400 |
| Capital Improvement Convertible Loan (145000 5 yrs) | | | | | | | | |
| Current RE Property Tax Escrow | | | 19,500 | 5,667 | 5,668 | 5,669 | 5,667 | 5,667 |
| Capital Reserves | | | | | | | | |
| Capital Improvements | | | | | | | | |
| Cash Collateral | | | | 25,000 | 38,000 | 38,000 | 38,000 | 38,000 |
| Deposits | | 8,500 | 4,675 | 11,500 | | | | |
| Class 6 Priority Vendors - Restaurant Depot 30 months $9,556.92 | | | | | | | | |
| Unsecured Family (1.57M @ 75%. Start 10/01/26, Qrtly @ $36,800) | | | | | | | 0 | 0 |
| Class 8 Critical Unsecd Creditors (284,600 @ 75% 60 months paid qtrly starting  01/01/21 | | | | | | | | |
| Class 9 Unscurd Creditors (1.9 Million, 75% 1.425mil start 10/01/20, 8 yrs) | | | | | | | | |
| TOTAL | 0 | 8,500 | 24,500 | 62,351 | 53,709 | 70,960 | 54,108 | 54,108 |
| | | | | | | | | |
| **NET CASH FLOW** | **41,874** | **95,983** | **-24,156** | **-445** | **13,415** | **6,243** | **50,221** | **24,193** |
| **Beginning Cash** | 31,468 | 172,403 | 144,712 | 44,382 | 18,020 | 4,435 | 10,678 | 60,899 |
| **Change in Receivables** | 26,994 | -80,359 | -168,684 | 2,304 | 0 | 0 | 0 | 0 |
| **Change in Inventory/Deposits** | 72,067 | -182,544 | 71,486 | 85,532 | 0 | 0 | 0 | 0 |
| **Change in Current Payables** | 0 | 139,229 | 1,524 | -113,753 | -27,000 | 0 | 0 | 0 |
| **Cash Escrow** | 0 | 0 | 19,500 | 0 | 0 | 0 | 0 | 0 |
| **Ending Cash** | 172,403 | 144,712 | 44,382 | 18,020 | 4,435 | 10,678 | 60,899 | 85,092 |

Cash Flow from June 2019 forward is assumed to be strictly cash basis. Sales are made and collected, inventory is purchased and consumed and all expenses are paid directly. May MOR not complete to date.

**Papa Grande Gourmet Foods, LLC  dba Garcia Foods**
**5 Year Projected Results**
**For the Year Starting October 1, 2019**

| | Oct-19 | Nov-19 | Dec-19 | Jan-20 | Feb-20 | Mar-20 | Apr-20 |
|---|---|---|---|---|---|---|---|
| Revenue | 1,005,994 | 1,031,144 | 941,875 | 991,324 | 892,191 | 936,801 | 983,641 |
| Equity Contribution | 145,000 | | | | | | |
| **TOTAL Revenue** | **1,150,994** | **1,031,144** | **941,875** | **991,324** | **892,191** | **936,801** | **983,641** |
| **COGS** | | | | | | | |
| MATERIAL PURCHASES | 535,692 | 549,084 | 500,136 | 527,880 | 472,861 | 497,441 | 522,805 |
| PAYROLL PRODUCTION | 121,738 | 124,782 | 113,927 | 119,624 | 108,502 | 111,215 | 113,995 |
| **TOTAL COGS** | **657,430** | **673,866** | **614,063** | **647,504** | **581,364** | **608,656** | **636,800** |
| **GROSS MARGIN $** | 348,564 | 357,278 | 327,812 | 343,820 | 310,828 | 328,145 | 346,841 |
| **GROSS MARGIN %** | 34.65% | 34.65% | 34.80% | 34.68% | 34.84% | 35.03% | 35.26% |
| **EXPENSES** | | | | | | | |
| BANK FEES | 1,300 | 1,300 | 1,300 | 900 | 900 | 900 | 900 |
| PAYROLL-EMPLOYEES | 71,517 | 71,517 | 71,517 | 71,517 | 71,517 | 71,517 | 71,517 |
| PAYROLL-EXECUTIVES | 35,618 | 35,618 | 35,618 | 35,618 | 35,618 | 35,618 | 35,618 |
| PAYROLL TAXES | 17,509 | 17,742 | 16,911 | 17,347 | 16,496 | 16,704 | 16,916 |
| HEALTH INSURANCE CENTURY | 3,865 | 3,926 | 3,709 | 4,205 | 3,960 | 4,020 | 4,081 |
| HEALTH INSURANCE HUMANA | 10,370 | 10,370 | 10,370 | 11,407 | 11,407 | 11,407 | 11,407 |
| LIFE INSURANCE MASS MUTUAL | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 |
| Professional Fees | 10,000 | 10,000 | 35,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Delivery Fuel | 5,382 | 5,517 | 5,039 | 5,304 | 4,773 | 5,012 | 5,262 |
| PAYROLL FEES PROLIANT | 1,465 | 1,465 | 1,465 | 1,465 | 1,465 | 1,465 | 1,465 |
| SAWS | 3,823 | 3,918 | 3,579 | 3,767 | 3,390 | 3,560 | 3,738 |
| CPS (GAS) | 4,326 | 4,434 | 4,050 | 4,263 | 3,836 | 4,028 | 4,230 |
| CPS (ELECTRIC) | 11,066 | 11,343 | 10,361 | 10,905 | 9,814 | 10,305 | 10,820 |
| PEST CONTROL | 420 | 420 | 420 | 420 | 420 | 420 | 420 |
| ATT LANDLINES AND MOBILE & Internet | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 |
| PURCHASING SPS COMMERCE | 460 | 460 | 460 | 460 | 460 | 460 | 460 |
| WASTE MANAGEMENT | 4,527 | 4,640 | 4,238 | 4,461 | 4,015 | 4,216 | 4,426 |
| INSURANCE COMMERCIAL NATIONWIDE | 9,625 | 9,625 | 9,625 | 9,625 | 9,625 | 9,625 | 9,625 |
| WEB TPA/EDI | 225 | 225 | 225 | 225 | 225 | 225 | 225 |
| RENT | 0 | 0 | 0 | 30,000 | 30,000 | 30,000 | 30,000 |
| Qvest | 19,548 | 19,548 | 19,548 | 19,548 | 19,548 | 19,548 | 19,548 |
| Night Hawk Security | 3,140 | 3,140 | 3,140 | 3,140 | 3,140 | 3,140 | 3,140 |
| Freight | 6,036 | 6,187 | 5,651 | 5,948 | 5,353 | 5,621 | 5,902 |
| Tmobil | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Cintas | 2,130 | 2,184 | 1,994 | 2,093 | 1,899 | 1,946 | 1,995 |
| Office supply | 700 | 700 | 700 | 500 | 500 | 700 | 500 |
| Building and Equip Maintenance | 15,000 | 25,000 | 2,500 | 5,000 | 5,000 | 5,000 | 5,000 |
| TOTAL OPERATING EXPENSES | 241,933 | 253,159 | 251,302 | 261,999 | 257,244 | 259,318 | 261,078 |
| | | | | | | | |
| **NOI - NET OPERATING INCOME** | **106,630** | **104,118** | **76,510** | **81,821** | **53,584** | **68,827** | **85,763** |
| IRS Payments $103,177.89 @ 6% 4.5 years | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 |
| BANKRUPTCY QUARTERLY FEES | 20,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 1 TransPecos Eq & LOC | 0 | 0 | 0 | 30,000 | 30,000 | 30,000 | 30,000 |
| LEASE PAYMENTS/VEHICLE/EQUIPMENT | 10,132 | 10,132 | 10,132 | 10,132 | 10,132 | 10,132 | 10,132 |
| NOTES PAYMENTS/VEHICLE/EQUIPMENT | 3,753 | 3,753 | 3,753 | 3,753 | 3,753 | 3,753 | 3,753 |
| Personal Property Tax Escrow 2019 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 |
| Personal Property Tax Escrow pst | 1,137 | 1,137 | 1,137 | 1,137 | 1,137 | 1,137 | 1,137 |
| Boiler Lease | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Capital Improvement Convertible Loan (14500 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 |
| Current RE Property Tax Escrow | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 |
| Capital Reserves | | | | | | | |
| Capital Improvements | 0 | 0 | 0 | 0 | 0 | 10,000 | 0 |
| Cash Collateral | 38,000 | 38,000 | 38,000 | | | | |
| Deposits | | | | | | | |
| Class 6 Priority Vendors - Restaurant Depot 3 | 319 | 319 | 319 | 319 | 319 | 319 | 319 |
| Unsecured Family (1.57M @ 75%. Start  10/0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 8 Critical Unsecd Creditors (284,600 @ 75% 60 months paid qtrly starting  01/01/21 | | | | 10,700 | | | 10,700 |
| Class 9 Unscurd Creditors (1.9 Million, 75% 1.425mil start 10/01/20, 8 yrs | | | | | | | |
| **TOTAL** | 88,108 | 68,108 | 68,108 | 70,808 | 60,108 | 70,108 | 70,808 |
| | | | | | | | |
| **NET CASH FLOW** | **18,523** | **36,011** | **8,402** | **11,013** | **-6,524** | **-1,281** | **14,955** |
| **Beginning Cash** | 85,092 | 103,615 | 139,625 | 148,028 | 159,041 | 152,517 | 151,236 |
| **Change in Receivables** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Change in Inventory/Deposits** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Change in Current Payables** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Cash Escrow** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Ending Cash** | 103,615 | 139,625 | 148,028 | 159,041 | 152,517 | 151,236 | 166,192 |

Cash Flow from June 2019 forward is assumed to be strictly cash basis. Sales are made and collected, inventory is purchased and consumed and all expenses are paid directly. May MOR not complete to date.

**Papa Grande Gourmet Foods, LLC  dba Garcia Foods**
**5 Year Projected Results**
**For the Year Starting October 1, 2019**

| | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 | Year 1 |
|---|---|---|---|---|---|---|
| Revenue | 1,032,823 | 929,541 | 831,364 | 971,269 | 1,035,582 | 11,583,549 |
| Equity Contribution | | | | | | |
| **TOTAL Revenue** | **1,032,823** | **929,541** | **831,364** | **971,269** | **1,035,582** | **11,583,549** |
| **COGS** | | | | | | |
| MATERIAL PURCHASES | 547,396 | 488,009 | 435,219 | 518,172 | 551,447 | 6,146,143 |
| PAYROLL PRODUCTION | 119,695 | 111,915 | 109,677 | 113,515 | 118,056 | 1,386,641 |
| **TOTAL COGS** | 667,091 | 599,924 | 544,895 | 631,687 | 669,503 | 7,532,784 |
| **GROSS MARGIN $** | 365,732 | 329,617 | 286,468 | 339,582 | 366,079 | 4,050,764 |
| **GROSS MARGIN %** | 35.41% | 35.46% | 34.46% | 34.96% | 35.35% | |
| **EXPENSES** | | | | | | |
| BANK FEES | 900 | 900 | 900 | 600 | 600 | 11,400 |
| PAYROLL-EMPLOYEES | 71,517 | 71,517 | 71,517 | 71,517 | 71,517 | 858,204 |
| PAYROLL-EXECUTIVES | 35,618 | 35,618 | 35,618 | 35,618 | 35,618 | 427,412 |
| PAYROLL TAXES | 17,352 | 16,757 | 16,586 | 16,880 | 17,227 | 204,428 |
| HEALTH INSURANCE CENTURY | 4,207 | 4,035 | 3,986 | 4,071 | 4,171 | 48,237 |
| HEALTH INSURANCE HUMANA | 11,407 | 11,407 | 11,407 | 11,407 | 11,407 | 133,773 |
| LIFE INSURANCE MASS MUTUAL | 1,082 | 1,082 | 1,082 | 1,082 | 1,082 | 12,984 |
| Professional Fees | 10,000 | 10,000 | 0 | 0 | 0 | 115,000 |
| Delivery Fuel | 5,526 | 4,973 | 4,448 | 5,196 | 5,540 | 61,972 |
| PAYROLL FEES PROLIANT | 1,465 | 1,465 | 1,465 | 1,465 | 1,465 | 17,580 |
| SAWS | 3,925 | 3,532 | 3,159 | 3,695 | 3,935 | 44,017 |
| CPS (GAS) | 4,441 | 3,997 | 3,575 | 4,176 | 4,453 | 49,809 |
| CPS (ELECTRIC) | 11,361 | 10,225 | 9,145 | 10,684 | 11,391 | 127,419 |
| PEST CONTROL | 420 | 420 | 420 | 420 | 420 | 5,040 |
| ATT LANDLINES AND MOBILE & Internet | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | 28,800 |
| PURCHASING SPS COMMERCE | 460 | 460 | 460 | 460 | 460 | 5,520 |
| WASTE MANAGEMENT | 4,648 | 4,183 | 3,741 | 4,371 | 4,660 | 52,126 |
| INSURANCE COMMERCIAL NATIONWIDE | 9,625 | 9,625 | 9,625 | 9,625 | 9,625 | 115,500 |
| WEB TPA/EDI | 225 | 225 | 225 | 226 | 227 | 2,703 |
| RENT | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 270,000 |
| Qvest | 19,548 | 19,548 | 19,548 | 19,548 | 19,548 | 234,576 |
| Night Hawk Security | 3,140 | 3,140 | 3,140 | 3,140 | 3,140 | 37,680 |
| Freight | 6,197 | 5,577 | 4,988 | 5,828 | 6,213 | 69,501 |
| Tmobil | 400 | 400 | 400 | 401 | 402 | 4,803 |
| Cintas | 2,095 | 1,959 | 1,919 | 1,987 | 2,066 | 24,266 |
| Office supply | 500 | 700 | 500 | 700 | 500 | 7,200 |
| Building and Equip Maintenance | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 87,500 |
| TOTAL OPERATING EXPENSES | 263,458 | 259,145 | 245,254 | 250,491 | 253,068 | 3,057,450 |
| **NOI - NET OPERATING INCOME** | **102,274** | **70,472** | **41,214** | **89,090** | **113,011** | **993,314** |
| IRS Payments $103,177.89 @ 6% 4.5 years | 2,200 | 2,200 | 2,200 | 2,200 | 2,200 | 26,400 |
| BANKRUPTCY QUARTERLY FEES | 0 | 0 | 0 | 0 | 0 | 20,000 |
| Class 1 TransPecos Eq & LOC | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 270,000 |
| LEASE PAYMENTS/VEHICLE/EQUIPMENT | 10,132 | 10,132 | 10,132 | 10,132 | 10,132 | 121,588 |
| NOTES PAYMENTS/VEHICLE/EQUIPMENT | 3,753 | 3,753 | 3,753 | 3,753 | 3,753 | 45,036 |
| Personal Property Tax Escrow 2019 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 48,996 |
| Personal Property Tax Escrow pst | 1,137 | 1,137 | 1,137 | 1,137 | 1,137 | 13,644 |
| Boiler Lease | 400 | 400 | 400 | 400 | 400 | 4,800 |
| Capital Improvement Convertible Loan (1450 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 29,000 |
| Current RE Property Tax Escrow | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 68,000 |
| Capital Reserves | | | | | | 0 |
| Capital Improvements | 10,000 | 0 | 0 | 15,000 | 25,000 | 60,000 |
| Cash Collateral | | | | | | 114,000 |
| Deposits | | | | | | |
| Class 6 Priority Vendors - Restaurant Depot | 319 | 319 | 319 | 319 | 319 | 3,828 |
| Unsecured Family (1.57M @ 75%. Start  10/ | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 8 Critical Unsecd Creditors (284,600  @ 75% 60 months paid qtrly starting  01/01/21 | | | 10,700 | | | 32,100 |
| Class 9 Unscurd Creditors (1.9 Million, 75% 1.425mil start 10/01/20, 8 yrs | | | | | | 0 |
| TOTAL | 70,108 | 60,108 | 70,808 | 75,108 | 85,108 | 857,392 |
| **NET CASH FLOW** | **32,167** | **10,364** | **-29,594** | **13,982** | **27,903** | **135,922** |
| **Beginning Cash** | **166,192** | **198,358** | **208,722** | **179,128** | **193,111** | |
| **Change in Receivables** | **0** | **0** | **0** | **0** | **0** | |
| **Change in Inventory/Deposits** | **0** | **0** | **0** | **0** | **0** | |
| **Change in Current Payables** | **0** | **0** | **0** | **0** | **0** | |
| **Cash Escrow** | | | | | | |
| **Ending Cash** | **198,358** | **208,722** | **179,128** | **193,111** | **221,014** | |

Cash Flow from June 2019 forward is assumed to be strictly cash basis. Sales are made and collected, inventory is purchased and consumed and all expenses are paid directly.
May MOR not complete to date.

**Papa Grande Gourmet Foods, LLC  dba Garcia Foods**
**5 Year Projected Results**
**For the Year Starting October 1, 2019**

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 |
|---|---|---|---|---|---|---|
| Revenue | 11,583,549 | 12,046,890 | 12,408,297 | 12,811,567 | 13,259,972 | 13,724,071 |
| Equity Contribution | | | | | | |
| **TOTAL Revenue** | **11,583,549** | **12,046,890** | **12,408,297** | **12,811,567** | **13,259,972** | **13,724,071** |
| **COGS** | | | | | | |
| MATERIAL PURCHASES | 6,146,143 | 6,354,735 | 6,514,356 | 6,694,044 | 6,895,185 | 7,102,207 |
| PAYROLL PRODUCTION | 1,386,641 | 1,435,174 | 1,478,229 | 1,593,518 | 1,641,324 | 1,698,770 |
| **TOTAL COGS** | **7,532,784** | **7,789,908** | **7,992,585** | **8,287,563** | **8,536,509** | **8,800,977** |
| **GROSS MARGIN $** | **4,050,764** | **4,256,982** | **4,415,712** | **4,524,005** | **4,723,463** | **4,923,094** |
| **GROSS MARGIN %** | | | | | | |
| **EXPENSES** | | | | | | |
| BANK FEES | 11,400 | 10,260 | 8,721 | 4,361 | 3,488 | 3,593 |
| PAYROLL-EMPLOYEES | 858,204 | 920,071 | 936,172 | 952,555 | 969,225 | 986,186 |
| PAYROLL-EXECUTIVES | 427,412 | 438,097 | 449,049 | 462,521 | 476,397 | 490,688 |
| PAYROLL TAXES | 204,428 | 213,691 | 219,054 | 230,157 | 236,151 | 242,937 |
| HEALTH INSURANCE CENTURY | 48,237 | 55,472 | 62,406 | 70,207 | 80,738 | 90,023 |
| HEALTH INSURANCE HUMANA | 133,773 | 153,839 | 173,069 | 194,702 | 223,908 | 249,657 |
| LIFE INSURANCE MASS MUTUAL | 12,984 | 12,984 | 12,984 | 12,984 | 12,984 | 12,984 |
| Professional Fees | 115,000 | 0 | 0 | 0 | 0 | 0 |
| Delivery Fuel | 61,972 | 64,451 | 66,384 | 68,542 | 70,941 | 73,424 |
| PAYROLL FEES PROLIANT | 17,580 | 13,185 | 13,581 | 13,988 | 14,408 | 14,840 |
| SAWS | 44,017 | 45,778 | 47,152 | 48,684 | 50,388 | 52,151 |
| CPS (GAS) | 49,809 | 51,802 | 53,356 | 55,090 | 57,018 | 59,014 |
| CPS (ELECTRIC) | 127,419 | 133,720 | 138,353 | 143,490 | 148,512 | 154,053 |
| PEST CONTROL | 5,040 | 5,191 | 5,347 | 5,507 | 5,673 | 5,843 |
| ATT LANDLINES AND MOBILE & Internet | 28,800 | 29,664 | 30,257 | 30,862 | 31,480 | 32,109 |
| PURCHASING SPS COMMERCE | 5,520 | 5,686 | 5,856 | 6,032 | 6,213 | 6,399 |
| WASTE MANAGEMENT | 52,126 | 54,211 | 55,837 | 57,652 | 59,670 | 61,758 |
| INSURANCE COMMERCIAL NATIONWIDE | 115,500 | 118,965 | 122,534 | 126,210 | 129,996 | 133,896 |
| WEB TPA/EDI | 2,703 | 2,784 | 2,868 | 2,954 | 3,042 | 3,134 |
| RENT | 270,000 | 250,200 | 250,200 | 250,200 | 250,200 | 250,200 |
| Qwest | 234,576 | 241,613 | 248,862 | 256,328 | 264,017 | 271,938 |
| Night Hawk Security | 37,680 | 38,810 | 39,975 | 41,174 | 42,409 | 43,681 |
| Freight | 69,501 | 69,872 | 73,209 | 76,229 | 79,560 | 83,717 |
| Tmobil | 4,803 | 4,947 | 5,096 | 5,248 | 5,406 | 5,568 |
| Cintas | 24,266 | 25,116 | 25,869 | 27,887 | 28,723 | 29,728 |
| Office supply | 7,200 | 7,416 | 7,638 | 7,868 | 8,104 | 8,347 |
| Building and Equip Maintenance | 87,500 | 90,125 | 92,829 | 95,614 | 98,482 | 101,436 |
| TOTAL OPERATING EXPENSES | 3,057,450 | 3,057,950 | 3,146,656 | 3,247,044 | 3,357,131 | 3,467,305 |
| **NOI - NET OPERATING INCOME** | **993,314** | **1,199,032** | **1,269,056** | **1,276,961** | **1,366,332** | **1,455,790** |
| IRS Payments $103,177.89 @ 6% 4.5 years | 26,400 | 26,400 | 26,400 | 26,400 | 13,200 | |
| BANKRUPTCY QUARTERLY FEES | 20,000 | 0 | 0 | 0 | 0 | 0 |
| Class 1 TransPecos Eq & LOC | 270,000 | 270,000 | 270,000 | 270,000 | 270,000 | 270,000 |
| LEASE PAYMENTS/VEHICLE/EQUIPMENT | 121,588 | 330,000 | 330,000 | 330,000 | 330,000 | 330,000 |
| NOTES PAYMENTS/VEHICLE/EQUIPMENT | 45,036 | 45,036 | 45,036 | 45,036 | 45,036 | 45,036 |
| Personal Property Tax Escrow 2019 | 48,996 | 50,466 | 52,989 | 55,639 | 58,421 | 61,342 |
| Personal Property Tax Escrow pst | 13,644 | 13,644 | 13,644 | 13,644 | 13,644 | 13,644 |
| Boiler Lease | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 |
| Capital Improvement Convertible Loan (1450 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 |
| Current RE Property Tax Escrow | 68,000 | 70,040 | 72,141 | 74,305 | 76,535 | 78,831 |
| Capital Reserves | 0 | 0 | 50,000 | 50,000 | 150,000 | 150,000 |
| Capital Improvements | 60,000 | 40,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Cash Collateral | 114,000 | 0 | 0 | 0 | 0 | 0 |
| Deposits | | | | | | |
| Class 6 Priority Vendors - Restaurant Depot | 3,828 | 3,828 | 1,914 | 0 | 0 | 0 |
| Unsecured Family (1.57M @ 75%. Start 10/ | 0 | 0 | 0 | 0 | 0 | 36,800 |
| Class 8 Critical Unsecd Creditors (284,600 @ starting 01/01/21 | 32,100 | 42,800 | 42,800 | 42,800 | 42,800 | 0 |
| Class 9 Unscurd Creditors (1.9 Million, 75% | 0 | 170,000 | 170,000 | 170,000 | 170,000 | 170,000 |
| TOTAL | 857,392 | 1,096,014 | 1,138,724 | 1,141,624 | 1,233,435 | 1,219,452 |
| **NET CASH FLOW** | **135,922** | **103,019** | **130,332** | **135,337** | **132,897** | **236,337** |
| **Beginning Cash** | **193,111** | 221,014 | 324,033 | 454,364 | 589,702 | 722,598 |
| **Change in Receivables** | **0** | 0 | 0 | 0 | 0 | 0 |
| **Change in Inventory/Deposits** | **0** | 0 | 0 | 0 | 0 | 0 |
| **Change in Current Payables** | **0** | 0 | 0 | 0 | 0 | 0 |
| **Cash Escrow** | **0** | 0 | 0 | 0 | 0 | 0 |
| **Ending Cash** | **221,014** | 324,033 | 454,364 | 589,702 | 722,598 | 958,936 |

Cash Flow from June 2019 forward is assumed to be strictly cash basis. Sales are made and collected, inventory is purchased and consumed and all expenses are paid directly. May MOR not complete to date.

**Papa Grande Gourmet Foods, LLC  dba Garcia Foods**
**5 Year Projected Results**
**For the Year Starting October 1, 2019**

**<u>Assumptions</u>**

Sales projected on current results and average 2017 & 2018
  seasonal growth % and a 5% growth rate for missed
  business due to recent interruptions along with new customer.
Year 4 Production at full capacity
Avg of 10% increase in Health Insurance/YR
Overtime reduction efforts start in June 2019
October 2019 floor repair brings November HEB line expansion.
2019 BCAD paid in full in 01/20 due to current escrow.
TransPecos Eq & LOC combined for $1,490,000 including Per Diem for 210 days
  with 6.50% interest 6 Years. Monthly payment of $25,000
Boiler lease & Install in June 2019
Personal Property Tax Escrow 2019  $44,535
Personal Property Tax past @ $47,276, 12%, 4.5 Yrs for $1,137/month.
Insider salaries to be cut 20% in October 2019.

| Secured Creditors | Bexar County T | $ | 1,137 | | Insider Payroll Reduction of 20% | | |
|---|---|---|---|---|---|---|---|
| Class 5 | CrownLift Credi | $ | 50 | | Kenny Garcia Sr | # | 12,500.00 |
| Class 2 | Leaf 6.50% | $ | 313 | | Hilda Garcia | # | 5,200.00 |
| Class 3 | Mercedes-Benz | $ | 2,000 | | Irma Martinez | # | 1,280.00 |
| Class 4 | Handtman Inc. | $ | 783 | | Kenny Garcia Jr | # | 3,500.04 |
| Class 7 | Ascentium Capi | $ | 607 | | Laura Smothers | # | - |
| | | $ | 3,753 | | Natalie Villagomez | # | 6,577.60 |
| | Transpecos equ | $ | 30,000 | | Andy Garcia | # | 2,560.00 |
| Priority Vendors - | Restaurant Depo | $ | 319 | | Gregg Smothers | # | 4,000.00 |
| | Rent | $ | 36,400 | | | | 35,617.64 |
| | | | | | | | |
| Leases | Multivac, Inc. | $ | 2,885 | | | | |
| | Multivac, Inc. | $ | 1,409 | | | | |
| | US Bank Equpi | $ | 632 | | | | |
| | Crown Lift Fork | $ | 539 | | | | |
| | Lift Masters | $ | 632 | | | | |
| | 4 Hour Funding | $ | 575 | | | | |
| | Time Payment | $ | 379 | | | | |
| | TUCS | $ | 3,083 | | | | |
| | | $ | 10,132 | | | | |

Equity Contribution contingent on Confirmation

| Cash | $ | 145,000 |
|---|---|---|
| LOC Contribution | $ | 200,000 |
| Additional Confirmation LOC | $ | 300,000 |
| Total | $ | 645,000 |
| Boiler Lease | 6% Int | |
| Cost + tax + freight | 66,000.00 | |
| Install | 10,000.00 | |
| | 76,000.00 | |
| Monthly Pmt | 1,470.18 | |

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | Papa Grande Gourmet Foods, LLC |
| United States Bankruptcy Court for the: | Western District of Texas, San Antonio Division |
| Case number (if known): | 19-50391 |

☑ Check if this is an amended filing

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors  12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

❑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

❑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

❑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

❑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

❑ *Schedule H: Codebtors* (Official Form 206H)

❑ *A Summary of Assets and Liabilities for Non-Individuals* (Official Form 206A-Summary)

☑ *Amended Schedule*  Schedule A/B

❑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

❑ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  05/30/2019
       MM/ DD/ YYYY

X _____ /s/ Kenneth D. Garcia
Signature of individual signing on behalf of debtor

Kenneth D. Garcia
Printed name

President
Position or relationship to debtor

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | Papa Grande Gourmet Foods, LLC |
| United States Bankruptcy Court for the: | Western District of Texas, San Antonio Division |
| Case number (if known): | 19-50391 |

☑ Check if this is an amended filing

## Official Form 206A/B

## Schedule A/B: Assets — Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1: Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

2. **Cash on hand** _____

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1 | TransPecos Banks | Checking account | 3731 | $8,505.11 |
| 3.2 | BBVA Compass | Checking account | 8528 | |
| 3.3 | TransPecos | Checking account | 4113 | $22,962.99 |

4. **Other cash equivalents** *(Identify all)*

Name of institution (bank or brokerage firm)
**None**

5. **Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| $31,468.10 |
|---|

### Part 2: Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

**None**

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

**None**

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.                                    _____

---

| Part 3: | Accounts receivable |
|---|---|

10. **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

11. **Accounts Receivable**

| | | face amount | | doubtful or uncollectible accounts | | | |
|---|---|---|---|---|---|---|---|
| 11a. 90 days old or less: | | $334,940.00 | - | $0.00 | = ...... → | | $334,940.00 |
| 11b. Over 90 days old: | | $0.00 | - | $0.00 | = ...... → | | $0.00 |

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.                              $334,940.00

---

## Part 4:   Investments

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

**None**

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or join venture**

Name of entity:                                  % of ownership:

**None**

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

**None**

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.                              _____

---

## Part 5:   Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.

☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

---

**19. Raw materials**

| Raw Material & Supplies | 01/31/2018 | | | $135,102.57 |
|---|---|---|---|---|
| | MM / DD / YYYY | | | |

**20. Work in progress**

**21. Finished goods, including goods held for resale**

| Packed Product | 01/31/2019 | | | |
|---|---|---|---|---|
| | MM / DD / YYYY | | | |

**22. Other inventory or supplies**

**23. Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$135,102.57

**24. Is any of the property listed in Part 5 perishable?**

☐ No

☑ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

**Part 6:** Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| None | | | |
| 29. **Farm animals** *Examples*: Livestock, poultry, farm-raised fish | | | |
| None | | | |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| None | | | |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| None | | | |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| None | | | |

**33. Total of Part 6**

Add lines 28 through 32. Copy the total to line 85.

---

Debtor 19-50390-rbk Doc#132 Filed 06/10/19 Entered 06/10/19 12:36:43 Main Document Pg 59 of 100
Papa Grande Gourmet Foods, LLC                    Case Number (if known) 19-50390
Name

**34. Is the debtor a member of an agricultural cooperative?**

☑ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

    ☐ No

    ☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☑ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

**Part 7:** Office furniture, fixtures, and equipment; and collectibles

---

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |
| **1 Conference table - $200, 1 granite table - $500, 41 office chairs - $1,025, 20 break room chairs - $400, 5 desks - $2,000, 10 desks - $1,500, 14 filing cabinets - $350, 1 white storage rack - $50, 45 break room tables - $2,025, 4 credenzas - $600, sofa - $150, 2 cabinets for storage supply - $160, side tables - $40, 1 recliner - $60, folding tables - $45, filing cabinet - $75** | | | $9,180.00 |
| 40. **Office fixtures** | | | |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| **14 computers - $2,800, 6 Zebra printers - $1,200, 1 mini fridge - $70, 7 printers - $1,225, computer station - $400, washer & dryer - $200, microwave - $65** | | | $5,960.00 |
| 42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| **None** | | | |

43. **Total of Part 7**

Add lines 39 through 42. Copy the total to line 86.

$15,140.00

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
☑ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 **2013 Lexus LS460**<br>VIN: JTHBL5EF9D5123720 | _____ | _____ | **$16,000.00** |
| 47.2 **2011 Toyota Camry**<br>VIN: 4T1BF3EK4BU603527 | _____ | _____ | **$7,000.00** |
| 47.3 **2011 Toyota Camry**<br>VIN: 4T1BE3EK3B8128050 | _____ | _____ | **$7,000.00** |
| 47.4 **2011 Toyota Camry**<br>VIN: 4T1BF3EK9BU587034 | _____ | _____ | **$7,000.00** |
| 47.5 **2010 Dodge Ram 1500**<br>VIN: 1D7RB1CTXAS130974 Pickup Truck, Standard Cab (G) | _____ | _____ | **$8,500.00** |
| 47.6 **2005 Dodge Ram 1500**<br>VIN: 1D7HU18D55S362668 Pickup Truck, Standard Cab (G) | _____ | _____ | **$4,000.00** |
| 47.7 **2018 Ford F-150**<br>VIN: 1FTFW1RG9HFA66330 Pickup Truck, Styleside, Raptor Trim Level, 4X4 (VG) | _____ | _____ | **$24,000.00** |
| 47.8 **2015 International 4300**<br>VIN: 1HSDJAPR9FH716101 | _____ | _____ | **$47,000.00** |
| 47.9 **2008 International 4400**<br>VIN: 1HTMSAAR98H642912 | _____ | _____ | **$26,000.00** |
| 47.10 **2015 Freightliner Light Duty Cascadia**<br>VIN: 1FUJGBDV8FLGG3980 Truck Tractor (G) | _____ | _____ | **$50,000.00** |
| 47.11 **2012 Freightliner M2 106**<br>VIN: 1FVACWDT7GHGV4919 Truck, Conventional (G) | _____ | _____ | **$30,000.00** |
| 47.12 **2012 Freightliner M2 106**<br>VIN: 1FVACWDT5CDBK4613 Truck, Conventional, Dry Van, Refrigerated (G) | _____ | _____ | **$30,000.00** |
| 47.13 **2007 Chevrolet G3500 Express**<br>VIN: 1GAHG39U271108719 Van, 15 Passenger (G) | _____ | _____ | **$8,000.00** |
| 47.14 **2005 Chevrolet G1500 Express**<br>VIN: 1GCFG15W751177504 Van, 8 Passenger (G) | _____ | _____ | **$5,500.00** |
| 47.15 **2006 Ford Econoline E350**<br>VIN: 1FTSE34LX6DA36845 Van, Cargo | _____ | _____ | **$7,000.00** |
| 47.16 **2007 Ford Econoline E350**<br>VIN: 1FBMS31L57DA62305 Van, Cargo | _____ | _____ | **$7,500.00** |
| 47.17 **2016 Freightliner**<br>VIN: 1fvacwdt7ghgv4919 2015 Freightliner Light Duty Cascadia | _____ | _____ | **$50,000.00** |
| 48. **Watercraft, trailers, motors, and related accesories** Examples: Boats trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 **2000 Utility**<br>VIN: LUYVS2534YM224909 Trailer, Dry Van, Refrigerated | _____ | _____ | **$9,500.00** |

Exhibit C1 - 8 of 12

Debtor    19-50390-rbk Doc#132 Filed 06/10/19 Entered 06/10/19 12:36:43 Main Document Pg 61
              Papa Grande Gourmet Foods, LLC                    Case number (if known) 19-50390
              Name                                                                          of 100

| | | | | | |
|---|---|---|---|---|---|
| 48.2 | **1996 Great Dane**<br>VIN: 1GRAA9626TW031601 Trailer, Dry Van, Refrigerated (G) | | | | $4,000.00 |
| 48.3 | **2006 Great Dane**<br>VIN: 1GRAAO6246B706689 Trailer, Dry Van, Refrigerated (G) | | | | $13,000.00 |
| 48.4 | **1993 Great Dane**<br>VIN: 1GRAA9629PW046745 Trailer, Dry Van, Refrigerated (G) | | | | $4,500.00 |
| 48.5 | **2000**<br>VIN: Y26833208 Trailer, Flatbed (F) | | | | $1,000.00 |
| 49. | **Aircraft and accesories** | | | | |
| | **None** | | | | |
| 50. | **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | | |
| 50.1 | **Cook Dept. See Exhibit 1** | | | | $191,500.00 |
| 50.2 | **Raw Foods Dept. - See Exhibit 2** | | | | $1,039,500.00 |
| 50.3 | **2018 TUCS Equipment TEVFF-10L 0199/** Packaging Machine, Form/Fill/Seal, Stainless Steel, Portable, w/ Filling Accessories, Smart Data Mdl. X40 Programmable Operator Control (N) | | | | $165,000.00 |
| 50.4 | **Case Sealer, Adjustable Sealing, Portable** | | | | $1,000.00 |
| 50.5 | **2015 Multivac F200 213290/** Rollstock Thermoform Packaging Machine, Vacuum Tray Packing Type, Stainless Steel, w/ Accessories, Touch Panel Operator Control (VG) | | | | $110,000.00 |
| 50.6 | **2009 Hinds Block CC30 /**VIN: 9810231 Piston Filler, Stainless Steel, 2 Head (G) | | | | $2,500.00 |
| 50.7 | **Assorted Packaging Department Area Items, IBNLT: S/S Carts, S/S-Poly Totes, S/S Tables, S/S Hand Washing Sinks, Digital Bench Scales, etc.** | | | | $2,000.00 |
| 50.8 | **Storage Tank, Vertical, Stainless Steel, Approx. 1,500 Gallon Capacity, w/ Support Legs (G)** | | | | $3,000.00 |
| 50.9 | **Eagle 3PFE18B - AA668200011/** Battery Charger (G) | | | | $400.00 |
| 50.10 | **Premier/** Battery Charger (F) | | | | $200.00 |
| 50.11 | **Platform Scale, 48" x 48", Approx. 5,000 Lb. Capacity, w/ Cardinal Mdl. 180 Digital Scale Read Out (F)** | | | | $700.00 |
| 50.12 | **1998 Casa Herrera CF/**VIN: 9810301 Grinder, Stainless Steel, Corn Grinding (G) | | | | $12,000.00 |
| 50.13 | **1998 Casa Herrera LBC18X/**VIN: 9810061 Auger, Stainless Steel, Corn Transport (G) | | | | $2,500.00 |
| 50.14 | **Storage Tank, Vertical, Polypropylene, Approx. 5,000 Gallon Capacity, w/ Support Stand (G)** | | | | $1,200.00 |
| 50.15 | **Jib Crane, Column Mount, Approx. 10" Jib Arm, w/ CM 2 Ton Chain Hoist (G)** | | | | $900.00 |
| 50.16 | **(3) Tubs, Stainless Steel, Corn Transport, Approx. 3'w x 12'L, Portable (G)** | | | | $2,700.00 |
| 50.17 | **Assorted Warehouse Items, IBNLT: Pallet Rack Sections, Metal Shelving Sections, Carts, Support Stands, Hand Trucks, Pallet Jacks, U.V. Bug Zappers, S/S Tables, S/S Hand Washing Sinks, Polymer Stacking Skids, Digital Bench Scales, etc.** | | | | $4,800.00 |
| 50.18 | **Ingersoll-Rand/** Air Compressor, Reciprocating Type, Vertical Tank Mount (Not In Use-F) | | | | $800.00 |
| 50.19 | **Lincoln AC/DC 225/125/** Welder, 225 Amp (F) | | | | $400.00 |
| 50.20 | **1995 Miller Bobcat 225G /**VIN: KF979830 Welder/Generator, 8,000 Watt (F) | | | | $700.00 |

| | | | | |
|---|---|---|---|---|
| 50.21 | **Assorted Maintenance Area Items, IBNLT: Work Tables/Benches, Metal Storage/Parts Storage Cabinets, Carts, Floor Jacks, Small Capacity Bench Tools, Hand Tools, etc.** | _____ | _____ | $4,500.00 |
| 50.22 | **1999 Williams & Davis 134864/VIN: 5785 Industrial Boiler, w/ De-aerator Tank, Feed Pumps, etc. (G)** | _____ | _____ | $14,500.00 |
| 50.23 | **Quincy QSF100-125/VIN: 60272F Air Compressor, Rotary Screw (P)** | _____ | _____ | $3,000.00 |
| 50.24 | **(45)Carts, Stainless Steel, Assorted Sizes & Configurations (G)** | _____ | _____ | $11,000.00 |
| 50.25 | **(10)Carts, Stainless Steel, Lowboy Configuration, Assorted Sizes (G)** | _____ | _____ | $3,000.00 |
| 50.26 | **(6)Carts, Stainless Steel, Storage, Assorted Sizes (G)** | _____ | _____ | $3,000.00 |
| 50.27 | **(25)Carts, Stainless Steel, Baker Tray, Assorted Sizes (G)** | _____ | _____ | $1,800.00 |
| 50.28 | **Alfa Romeo High Efficiency Twin/ (2) Water Softening Tanks, w/ Controller (VG)** | _____ | _____ | $2,000.00 |
| 50.29 | **1997 Superior Boiler 6-5-12501-GP/VIN: 13626 Industrial Boiler, Natural Gas Fired, Skid Mount, w/ Seminole Boiler-Burner Unit, De-aerator Tank (G-Not In Use)** | _____ | _____ | $15,000.00 |
| 50.30 | **1999 CarboTech/VIN: 96923 Carbon Dioxide Receiver Tank, Welded Carbon Steel, Jacketed, 50 Ton Capacity, Approx. 6'Diam. x 60'L (G)** | _____ | _____ | $20,000.00 |
| 50.31 | **2017 Quincy QGS-100/VIN: API175287 Air Compressor, Rotary Screw (VG)** | _____ | _____ | $23,500.00 |
| 50.32 | **Pneumatech 325/VIN: 0401-T139953P-ST Air Dryer, 325 SCFM (F)** | _____ | _____ | $3,000.00 |
| 50.33 | **2000 Atlas Copco GA37/VIN: AII36849 Air Compressor, Rotary Screw (G)** | _____ | _____ | $5,000.00 |
| 50.34 | **Ultrafilter Ultratroc/ Air Dryer (F)** | _____ | _____ | $1,500.00 |
| 50.35 | **GSI/ Silo, Bolted/Galvanized Construction, Approx. 12'Diam. x 20'H, Cone Bottom, w/ Support Legs (G)** | _____ | _____ | $7,400.00 |
| 50.36 | **Equipment in Storage - See Exhibit 3** | _____ | _____ | $512,500.00 |
| 50.37 | **Crown SC5245-40/VIN: 9A193697 Forklift, Electric, Hard Tire, ROPS, w/ Side Shift Attachment (G)** | _____ | _____ | $10,000.00 |
| 50.38 | **Linde E20/VIN: A1X346000162/2616 Forklift, Electric, Hard Tire, ROPS, w/ Side Shift Attachment (G)** | _____ | _____ | $14,000.00 |
| 50.39 | **Husqvarna YTH24K48/VIN: 05813A023308 Lawn Mower, Riding Type (G)** | _____ | _____ | $700.00 |
| 50.40 | **Toyota 8HBW23/VIN: 19829 Pallet Jack, Electric, 4,500 Lb. Capacity (VG)** | _____ | _____ | $2,000.00 |
| 50.41 | **Barrett WPTT1C60BV/VIN: 1W16-9305189 Pallet Jack, Electric, Approx. 4,500 Lb. Capacity (F)** | _____ | _____ | $1,000.00 |

51.  **Total of Part 8**

    Add lines 47 through 50. Copy the total to line 87.

| | |
|---|---|
| | $2,566,700.00 |

52.  **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

53.  **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No
☑ Yes

Debtor  Papa Grande Gourmet Foods, LLC          Case Number (if known) 19-50391
          Name

---

## Part 9: Real Property

54. **Does the debtor own or lease any real property?**

☑ No. Go to Part 10.
☐ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has interest**

| Description and location of property | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment, or office building), if available. | | | | |
| **None** | | | | |

56. **Total of Part 9**

Add the current value on lines 55.1 through 55.6 and entries from any addition sheets. Copy the total to line 88.

_____

57. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No
☐ Yes

---

## Part 10: Intangibles and Intellectual Property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.
☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | | | |
| **Papa Grande (logo), Papa Grande, Mama Garcia's, Barbacoa Texas, The Naked Tamale, Tamale Dog, Tamale Wings, Emergency Taco, Tamaleville, Tamale Gating, Chorizo Nation, Andy Garcia Food Products (logo)** | | | |
| 61. **Internet domain names and websites** | | | |
| **None** | | | |
| 62. **Licenses, franchises, and royalties** | | | |
| **None** | | | |
| 63. **Customer lists, mailing lists, or other compilations** | | | |
| **None** | | | |
| 64. **Other intangibles, or intellectual property** | | | |
| **None** | | | |

---

Debtor     19-50390-rbk   Doc#132   Filed 06/10/19   Entered 06/10/19 12:36:43   Main Document   Pg 64
Papa Grande Gourmet Foods, LLC      Case number (if known) 19-50390
       Name
of 100

**Exhibit C1 - 11 of 12**

**65.** **Goodwill**

_____ **None** _____

**66.** **Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.

| | |
|---|---|
| | **$0.00** |

**67.** **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

☑ No

☐ Yes

**68.** **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No

☐ Yes

**69.** **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

**Part 11:**   All other assets

---

**70.**   **Does the debtor own any other assets that have not yet been reported on this form?**

☑ No. Go to Part 12.

☐ Yes. Fill in the information below.

**Current value of
debtor's interest**

**71.** **Notes receivable**

Description (include name of obligor)

_____ **None** _____

**72.** **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____ **None** _____

**73.** **Interests in insurance policies or annuities**

_____ **None** _____

**74.** **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____ **None** _____

**75.** **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____ **None** _____

**76.** **Trusts, equitable or future interests in property**

_____ **None** _____

**77.** **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

_____ **None** _____

**78.** **Total of Part 11**

Add lines 71 through 77. Copy the total to line 90.

| | |
|---|---|
| | _____ |

**79.** **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 12: | Summary |

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80.  **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $31,468.10 | |
| 81.  **Deposits and prepayments.** *Copy line 9, Part 2.* | | |
| 82.  **Accounts receivable.** *Copy line 12, Part 3.* | $334,940.00 | |
| 83.  **Investments.** *Copy line 17, Part 4.* | | |
| 84.  **Inventory.** *Copy line 23, Part 5.* | $135,102.57 | |
| 85.  **Farming and fishing-related assets.** *Copy line 33, Part 6.* | | |
| 86.  **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $15,140.00 | |
| 87.  **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $2,566,700.00 | |
| 88.  **Real property.** *Copy line 56, Part 9* ............................................ ➡ | | |
| 89.  **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90.  **All other assets.** *Copy line 78, Part 11.* | + | |
| 91.  **Total.** Add lines 80 through 90 for each column... 91a. | $3,083,350.67 | + 91b. $0.00 |
| 92.  **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ...................................................... | | $3,083,350.67 |

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | KHRL Group, LLC |
| United States Bankruptcy Court for the: | Western District of Texas, San Antonio Division |
| Case number (if known): | 19-50390 |

☐ Check if this is an amended filing

## Official Form 206A/B

## Schedule A/B: Assets — Real and Personal Property          **12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:  Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☑ No. Go to Part 2.
☐ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand** _____

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number |
|---|---|---|
| **None** | | |

4. **Other cash equivalents** *(Identify all)*

| Name of institution (bank or brokerage firm) | | |
|---|---|---|
| **None** | | |

5. **Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.   _____

### Part 2:  Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

Debtor    HHH Group, LLC     Case number (if known)   19-50390

Name

7. **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

**None**

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

**None**

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.      _____

| Part 3: | Accounts receivable |
|---|---|

10. **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

**Current value of debtor's interest**

11. **Accounts Receivable**

| | face amount | | doubtful or uncollectible accounts | | | |
|---|---|---|---|---|---|---|
| 11a. 90 days or less: | $0.00 | - | $0.00 | = ...... ➔ | $0.00 |
| 11b. Over 90 days old: | $0.00 | - | $0.00 | = ...... ➔ | $0.00 |

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.      _____

| Part 4: | Investments |
|---|---|

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

**None**

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or join venture**

Name of entity:          % of ownership:

**None**

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

**None**

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.       _____

**Part 5:** Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19.   **Raw materials** |  |  |  |  |
| 20.   **Work in progress** |  |  |  |  |
| 21.   **Finished goods, including goods held for resale** |  |  |  |  |
| 22.   **Other inventory or supplies** |  |  |  |  |

**23. Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

_____

**24. Is any of the property listed in Part 5 perishable?**

☑ No

☐ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

**Part 6:**   Farming and fishing-related assets (other than titled motor vehicles and land)

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | | | |
| **None** | | | |
| **29. Farm animals** _Examples_: Livestock, poultry, farm-raised fish | | | |
| **None** | | | |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| **None** | | | |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |
| **None** | | | |
| **32. Other farming and fishing-related property not already listed in Part 6** | | | |
| **None** | | | |

**33. Total of Part 6**

Add lines 28 through 32. Copy the total to line 85.

_____

**34. Is the debtor a member of an agricultural cooperative?**

☑ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☑ No

☐ Yes

Name

**37.  Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

**Part 7:**  Office furniture, fixtures, and equipment; and collectibles

**38.   Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39.  **Office furniture** | | | |
| 40.  **Office fixtures** | | | |
| 41.  **Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| 42.  **Collectibles** *Examples*: Antiques and figurines; paintings, prints or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles **None** | | | |

**43.  Total of Part 7**

Add lines 39 through 42. Copy the total to line 86.

_____

**44.  Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No

☐ Yes

**45.  Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

**Part 8:**  Machinery, equipment, and vehicles

**46.   Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47.  **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** **None** | | | |
| 48.  **Watercraft, trailers, motors, and related accesories** Examples: Boats trailers, motors, floating homes, personal watercraft, and fishing vesels **None** | | | |
| 49.  **Aircraft and accesories** | | | |

**None**

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

**None**

51. **Total of Part 8**

Add lines 47 through 50. Copy the total to line 87.

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 9:  Real Property

54. **Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has interest**

| Description and location of property | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment, or office building), if available. | | | | |
| 55.1  **FOOD PROCESSING FACILITY** | Fee Simple | | | $5,400,000.00 |

56. **Total of Part 9**

Add the current value on lines 55.1 through 55.6 and entries from any addition sheets. Copy the total to line 88.

$5,400,000.00

57. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No
☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No
☑ Yes

## Part 10:  Intangibles and Intellectual Property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**60.** **Patents, copyrights, trademarks, and trade secrets**

None

**61.** **Internet domain names and websites**

None

**62.** **Licenses, franchises, and royalties**

None

**63.** **Customer lists, mailing lists, or other compilations**

None

**64.** **Other intangibles, or intellectual property**

None

**65.** **Goodwill**

None

**66.** **Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.

**67.** **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

☑ No

☐ Yes

**68.** **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No

☐ Yes

**69.** **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

**Part 11:**   All other assets

**70.** **Does the debtor own any other assets that have not yet been reported on this form?**

☑ No. Go to Part 12.

☐ Yes. Fill in the information below.

Current value of debtor's interest

**71.** **Notes receivable**

Description (include name of obligor)

None

**72.** **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

None

**73.** **Interests in insurance policies or annuities**

None

**74.** **Causes of action against third parties (whether or not a lawsuit has been filed)**

None

Exhibit C2 - 8 of 9

Debtor 1 RHHQ Group, DEC Doc#132 Filed 06/10/19 Entered 06/10/19 12:36:43 Main Document Pg 73
Name      Case number (if known) 19-50390
of 100

**75.**    **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

       **None**

**76.**    **Trusts, equitable or future interests in property**

       **None**

**77.**    **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

       **None**

**78.**    **Total of Part 11**

       Add lines 71 through 77. Copy the total to line 90.

       _____

**79.**    **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

       ☑ No

       ☐ Yes

---

**Part 12:**   Summary

---

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| **80.**   **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | _____ | |
| **81.**   **Deposits and prepayments.** *Copy line 9, Part 2.* | _____ | |
| **82.**   **Accounts receivable.** *Copy line 12, Part 3.* | _____ | |
| **83.**   **Investments.** *Copy line 17, Part 4.* | _____ | |
| **84.**   **Inventory.** *Copy line 23, Part 5.* | _____ | |
| **85.**   **Farming and fishing-related assets.** *Copy line 33, Part 6.* | _____ | |
| **86.**   **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | _____ | |
| **87.**   **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | _____ | |
| **88.**   **Real property.** *Copy line 56, Part 9.*............................................ → | | $5,400,000.00 |
| **89.**   **Intangibles and intellectual property.** *Copy line 66, Part 10.* | _____ | |
| **90.**   **All other assets.** *Copy line 78, Part 11.*    + | _____ | |

| | | | |
|---|---|---|---|
| 91. | **Total.** Add lines 80 through 90 for each column... 91a. | $0.00 | + 91b. | $5,400,000.00 |

92.    **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ....................................................................    $5,400,000.00

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **KHRL GROUP, LLC** | § | **Case No. 19-50390** |
| | § | |
| **Debtor** | § | |
| **And** | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **PAPA GRANDE GOURMET** | § | **Case No. 19-50391** |
| **FOODS, LLC** | § | |
| | § | |
| **Debtor** | § | **Jointly Administered Under** |
| | § | **Case No. 19-50390** |

## JOINT SUBSTANTIVELY CONSOLIDATING CHAPTER 11 PLAN OF PAPA GRANDE GOURMET FOODS, LLC AND KHRL GROUP, LLC

### ARTICLE I
### SUMMARY

This Joint Substantively Consolidating Chapter 11 Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to consolidate KHRL Group, LLC's ("Consolidated Debtor") assets and liabilities into Papa Grande Gourmet Foods, LLC (the "Debtor") and (collectively "Debtors"). The plan proposes to pay creditors of Papa Grande Gourmet Foods, LLC and KHRL Group, LLC's from operation cash flow of Papa Grande Gourmet Foods, LLC and through sale of the primary asset of KHRL Group, LLC.

This Plan provides for six classes for Secured Claims, one class of Priority Claims, three classes for Unsecured Claims, and one class for Equity Holders.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Generally, the plan provides as follows.

Debtor shall generally pay non-governmental secured lenders 6.5 percent interest on their loans unless otherwise stated in the Plan. The duration of the secured loan payouts shall be in accordance with the stated plan treatment for each creditor.

Debtor shall pay property taxes currently due and payable for tax year 2019 in January 2020 using its escrowed property taxes. Debtor shall pay property taxes for tax years prior to 2019 in

1

regular monthly installments within 60 months of the date of the order for relief and at the statutory interest rate.

Debtor shall pay past due federal payroll taxes in regular monthly installments within 60 months of the date of the order for relief and at the statutory interest rate in effect on the confirmation date, currently 6.0%.

Debtor shall pay Texas priority comptroller claims in regular monthly installments within 60 months of the date of the order for relief and at the statutory interest rate in effect on the confirmation date.

Debtor shall pay critical unsecured vendor claims a 75% dividend in quarterly payments over 60 months beginning January 1, 2020.

Debtor shall pay general unsecured claims a 75% dividend over 8 years beginning October 1, 2020.

Debtor shall pay unsecured insider claims a 75% dividend over 8 years beginning after the general unsecured creditor payments have completed.

Kenneth and Hilda Garcia are the equity holders and shall retain their interests in Debtors.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## SUBSTANTIVE CONSOLIDATION

The Plan and Disclosure Statement shall constitute a motion to substantively consolidate KHRL Group, LLC ("KHRL" or "Consolidated Debtor") with Papa Grande Gourmet Foods, LLC ("Papa Grande" or "Debtor"). Accordingly, on the Effective Date, except as otherwise provided in the Plan, (a) for the purposes of making Distributions pursuant to the Plan and post Effective Date governance, all assets and liabilities of KHRL, will be treated as thought they are merged into and with the assets and liabilities of Papa Grande, (b) no Distributions will be made under the Plan on account of KHRL intercompany claims, (c) Third-Party guarantee claims for which KHRL is the primary obligor on the corresponding primary claim will be deemed merged and eliminated, so that any claim against KHRL and any guarantee thereof will be deemed to be one obligation of Papa Grande and (d) the unsecured claimants of KHRL shall be treated along with the class 9 unsecured claimants of Papa Grande. Confirmation of this Plan shall constitute Court approval of the substantive consolidation.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

**Classified Claims:**

| Class | Description | Impaired? | Voting? |
|-------|-------------|-----------|---------|

2

| | | | |
|---|---|---|---|
| 2.01.  Class 1. | Secured Claims of TransPecos | Y | Yes |
| 2.02.  Class 2. | Secured Claim of Leaf Financial | Y | Yes |
| 2.03.  Class 3. | Secured Claim of Mercedes Benz Financial (POC 9) | Y | Yes |
| 2.04.  Class 4. | Secured Claim of Handtmann (POC 25) | Y | Yes |
| 2.05  Class 5. | Secured Claim of Crown Lift (POC 22) | Y | Yes |
| 2.06  Class 6. | Restaurant Depo | Y | Yes |
| 2.07  Class 7. | Ascentium Capital | Y | Yes |
| 2.08  Class 8. | Unsecured Critical Vendors[1] | Y | Yes |
| 2.09  Class 9. | General Unsecured Claims | Y | Yes |
| 2.10  Class 10. | Insider Unsecured Claims | Y | No |
| 2.11  Class 11. | Equity Holders | Y | No |

**Unclassified Claims:**

2.12    Ford Motor Credit and Lexus Financial Services.    Debtor shall surrender the collateral within 30 days of the earlier entry of the order confirming the plan or order of the court modifying or lifting the automatic stay.  The Creditors shall vote along with the unsecured Class 9 claimants.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01.    Professional Fees. Although not classified, the professionals who have provided services to the Debtor during the pendency of this Chapter 11 case are entitled to administrative claim treatment.  These claims do not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may not be paid in the ordinary course of business they are listed here. The following professional fees shall be paid within 60 days of the Effective date provided they have been approved by the Court:

The Smeberg Law Firm (Attorneys)                    $100,000[2]

Barry Snell and Bayne, Snell & Krause (Attorneys)        $25,000

---

[2] To the extent the Smeberg Law Firm Fees have not been paid when the case is confirmed, it has agreed to be paid outstanding fees and expenses at $8,000 per month beginning the 30 days after the effective date.

3

|  |  |
|---|---|
| US Trustee | $20,000 |
| Total Estimated Administrative Claims | $ 145,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtor's Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtor is moderate for a case of this size.

3.02.  <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

3.03.  <u>Priority Tax Claims</u>.  Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

3.03.1. <u>Internal Revenue Service</u>.

The IRS filed an amended proof of claim in the amount of $103,177.89 for priority debt in Papa Grande and $100 in KHRL. Debtor shall pay the IRS claim in equal monthly installments at 6% interest (or the statutory rate in effect on the confirmation date) within 5 years of the petition filing date.  The first payment shall be due the 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month.

Debtor shall have thirty (30) days from the Effective Date to object to the IRS claims; otherwise, such claims are deemed as an allowed secured or priority claim in the amount of the IRS' filed Proof of Claim consistent with the treatment of each tax account under this Plan

The secured and unsecured priority debts owed by the Debtor to the Internal Revenue Service (IRS) are Non-Dischargeable debts, except as otherwise provided for in the Code, and that if the Debtor default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy

discharge, and dismissal of the case. The Liens continue to be enforceable against all of the Debtor' property under federal law. A failure by the Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan and/or failure to remain current on filing and paying post-confirmation taxes, shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the 15th day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within 15 days of the date of the demand letter. Each Debtor can receive up to three notices of default from the Internal Revenue Service; however, on the third notice of default from the Internal Revenue Service the third notice cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority and unsecured general.

The IRS is bound by the provisions of the confirmed plan and is barred under 11 USC 1141 from taking any collection actions against the Debtor for prepetition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 USC 6503 (h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS have been made; or (2) 30 days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

The Internal Revenue Service will agree to withhold collections of the trust fund recovery penalty assessment against the responsible persons during the duration of the Plan (provided there is no default as to the IRS). This agreement only encompasses the tax periods involved in and provided for under the confirmed plan. The forbearance of collection efforts by the Internal Revenue Service does not preclude any action by the IRS to file liens or otherwise to proceed with investigation, assessment or perfection of a security interest against the responsible persons as permitted under federal and state law. The IRS will withhold collection efforts against responsible persons and the period of limitations on collection will be suspended under 26 U.S.C. 6503(h) for the trust fund periods and until the earlier of (1) all required payments to the Internal Revenue Service have been made under the Plan; or (2) ten (10) days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

The Debtor must remain current with respect to all post-petition federal tax liabilities, including, but not limited to making timely federal tax deposits, the timely filing of tax returns and payment of all tax liabilities as required by applicable law during the term of the Plan. Failure to remain current with respect to one or more post-petition federal

tax liabilities shall constitute an event of default under the Plan; however, the Bankruptcy Court shall have no jurisdiction over any tax issues arising after the date of confirmation. There will be no automatic stay or post-confirmation injunction with regard to federal tax liabilities accrued after the Petition Date (February 25, 2019), and the IRS shall be free to collect any such liabilities in accordance with the provisions of Title 26 of the United States Code and other applicable law.

To the extent the Debtor have made, or makes in the future, any overpayment of post-petition taxes, post-petition over payments of federal taxes may be setoff against any post-petition federal tax liabilities as allowed by applicable law.

Federal Tax Liens, if any were filed prior to the date Debtor commenced their case, survive plan confirmation and continue to attach and be enforceable against all property of the Debtor.  Federal Tax Liens will be released when the liability is satisfied or when the Debtor make all payments to the IRS pursuant to the plan, whichever occurs first.

3.03.2. <u>Texas Comptroller</u>.

The Texas Comptroller filed a claim in the amount of $10,150.  This unsecured priority debt shall be paid in full in equal monthly installments at the statutory rate of interest within 60 months of the date the bankruptcy case was filed, with the first payment being made on the fifteenth (15th) day of the first month following 30 days after the Plan's Effective Date and subsequent payments on the 15th day of each following month.

Notwithstanding anything in the Plan to the contrary, but with respect to the Texas Comptroller only, the Plan shall not limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist.

Notwithstanding anything in the Plan to the contrary, but with respect to the Texas Comptroller of Public Accounts only, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists.  A failure by the reorganized Debtor to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the reorganized Debtor at:  P.O. Box 1438, Converse, TX  78109-

6

4186, Attn: Chief Executive Officer, and upon Debtor's attorney at: The Smeberg Law Firm, PLLC, 2010 W. Kings Highway, San Antonio, TX 78201-4926, Attn: Ron Smeberg, Esq.

The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt.

3.04 <u>Secured and Unsecured Priority Claims of Property (Ad Valorem) Taxing</u> Authorities. The following claims were made in each respective case by property taxing authorities:

Papa Grande: Bexar County $92,189.26  KHRL: Bexar County $126,639.66

Taxes associated with the real estate located at 1802 Jackson Keller, San Antonio, Texas shall be paid upon sale of the property. Personal Property taxes shall be paid as follows: Ad Valorem taxes for 2018 and prior will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Debtor shall make separate payments on each account consistent with separate amortization schedules provided to the Debtor. Each separate payment which will be applied pro rata to the various tax accounts indicated above.

Debtor shall pay 2019 Ad Valorem Taxes when they come due in January 2020.

In the event a Debtor sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtor shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred.

A Debtor may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time. The Debtor shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan. The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment.

Should a Debtor fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtor' counsel advising of that default, and providing the Debtor with a period of fifteen (15) days to cure the default.  In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Debtor are still paying any pre-petition debt, shall be considered an event of default.  Debtor shall be entitled to no more than three (3) Notices of Default.  In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

**Class 1 Claims:**

Class 1 consists of the **impaired** secured claims of Transpecos Bank ("TRANSPECOS") in the amount of $1,462,069.97 ("PP Notes"), which is the principal and interest of one line of credit loan and one equipment loan ("PP Notes") secured by Papa Grande's personal property and $4,583,870.00 ("Plant Note") secured by a deed of trust over KHRL Group's real estate located at 1802 Jackson Keller (the "Plant").  These debts are cross collateralized and combined they shall be referred to as the "Total Debt."  Debtor has filed a motion to employ a broker to sell the Plant, first through conventional advertising and then if the plant does not sell within 6 months, by auction.

Upon payment of all funds owed to TRANSPECOS pursuant to this Plant of Reorganization, TRANSPECOS shall release all liens against all of Debtor's property.

If Debtor defaults on its payments to TRANSPECOS and fail to cure after 7 business days written notice to Debtor and Debtor's counsel, which may be by email or certified mail, or defaults more than 3 times, then TRANSPECOS may accelerate the note and pursue all remedies under TRANSPECOS's loan documents, and default interest shall accrue in accordance with TRANSPECOS's loan documents.  Unless otherwise stated herein, TRANSPECOS's loan documents shall govern.  TRANSPECOS shall retain all of its liens against Debtor's property as provide for in the loan documents except to the extent modified herein. TRANSPECOS is impaired and shall vote on the plan.

**If the Plant has not been sold prior to confirmation:**

8

Debtor have been making combined $25,000 monthly adequate assurance payments, which likely shall increase to $38,000 on June 24, 2019. Of these amounts, $6,250 of each $25,000 and $7400 of each $38,000 payment shall be applied pro rata to accrued interest on the PP Notes and then to principal on the PP Notes. The remaining amounts of the adequate assurance payments shall be paid toward the Plant Note. After applying the adequate assurance payments, Debtor contends the outstanding balance for principal, interest, costs and attorney fees will be approximately $1,490,000 on the PP Notes and $4,650,000 on the Plant Note prior to the Plant sale.

Debtor shall continue making adequate assurance payments to TransPecos until the Confirmation Balance is determined. Within 20 days of the confirmation date, TRANSPECOS shall provide Debtor's counsel in writing with an itemized accounting showing the total amounts it contends is owed on the Total Debt (after applying all post-petition payments, fees and costs as provided for above). Debtor shall have 30 days after timely receiving the alleged outstanding balance from TRANSPECOS to file a claim objection with the Court. The final balance as determined by the Court upon a hearing on any objection shall be the "Confirmation Balance." Debtor shall make interest only adequate assurance payments to TransPecos on the Confirmation Balance at 6.5 % interest until the Plant is sold.

If the Plant sells pursuant to a conventional real estate contract, Debtor shall pay all amounts remaining on the Confirmation Debt after application of the sales proceeds at closing.

If the Plant goes to auction, the auction will allow for TransPecos to credit bid on the Plant. In the event the Plant sells for less than the amount owed on the Confirmation Balance, then the remaining deficiency claim ("Deficiency Claim") shall be paid as follows.

Debtor shall pay the entire Deficiency Claim amortized in 72 monthly payments at 6.5% interest to TRANSPECOS. In the event the new amortization schedule causes the debtor to be required to make payments larger than $30,000 monthly, then the payments shall be set to $30,000 monthly and all principal and interest shall be due in a balloon payment in month 73. The first payment shall be due and payable on the first day of the month to occur 30 days after the sale of the Plant. Debtors shall continue making interest only payments as provided for above until the date the Plant is sold.

**If the Plant sells prior to confirmation:**

Within 10 days of the confirmation date, TRANSPECOS shall provide Debtor's counsel in writing with an itemized accounting showing the total amounts it contends are owed on all three loans (after applying all post-petition payments, fees, plant sale proceeds and costs as provided for above). Debtor shall have 30 days after timely receiving the alleged outstanding balance from TRANSPECOS to file a claim objection with the Court. The final balance as determined by the Court shall be the "Confirmation Balance."

9

Debtor shall pay the entire Confirmation Balance amortized in 72 monthly payments at 6.5% interest to TRANSPECOS. In the event the new amortization schedule causes the debtor to be required to make payments larger than $30,000 monthly, then the payments shall be set to $30,000 monthly and all principal and interest shall be due in a balloon payment in month 73. The first payment shall be due and payable on the 5th day of the month following the last adequate assurance payment. The last adequate assurance payment shall be made on the fifth day of the month to occur 30 days after the Confirmation Balance is determined by the Court.

### Class 2 Claims:

The Class 2 claim consists of the impaired secured claim(s) of Leaf Financial ("Leaf") in the amount of approximately $16,000 over a metal detector (the "Collateral"). Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments first to interest and then principal according to the underlying note) and Debtor shall pay the outstanding balance in 60 equal monthly installments of $313 at 6.5% interest. If Leaf does not supply an outstanding balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding balance. Debtor shall maintain insurance on the Collateral. Leaf shall maintain its lien over the Collateral until all plan payments have been made. Once all its plan payments have been made, Leaf shall release its lien and provide Debtor with title to the Collateral. The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month. Debtor shall make payments in the amount of $313.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment. Leaf is impaired and shall vote on the plan.

### Class 3 Claims:

The Class 3 claim consists of the impaired secured claim(s) of Mercedes Benz Financial ("Mercedes") in the amount of $109,414.95 over a 2015 Freightliner tractor and trailer, and a 2016 Freightliner box truck (the "Collateral"). Pursuant to Debtor's proof of claim, the secured balance is $102,050 ("Secured Balance") and the unsecured balance is $7364.95 ("Unsecured Balance"). The Unsecured Balance shall be paid along with the class 9 General Unsecured Class. The Secured Balance shall be treated as follows: Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments to the Secured Balance and accounting for post petition interest) and Debtor shall pay the outstanding Secured Balance in 60 equal monthly installments of $2000.00 at 6.5% interest. If Mercedes does not supply an outstanding Secured Balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding Secured Balance. Debtor shall maintain insurance on the Collateral. Mercedes shall maintain its lien over the Collateral until all its plan payments have been made. Once all its plan payments have been made, Mercedes shall release its liens and provide Debtor with title to the Collateral. The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments

due the 15th day of each following month.  Debtor shall make payments in the amount of $2000.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment.  Mercedes is impaired and shall vote on the plan.

### Class 4 Claims:

The Class 4 claim consists of the impaired secured claim(s) of Handtmann, Inc. ("Handtmann") in the amount of $55,516.70 over parts and equipment supplied to the plant (the "Collateral").  Pursuant to Debtor's proof of claim, the secured balance is $40,000 ("Secured Balance") and the unsecured balance is $15,516.70 ("Unsecured Balance").  The Unsecured Balance shall be paid along with the class 9 General Unsecured Class.  The Secured Balance shall be treated as follows:  Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments to the Secured Balance and accounting for post petition interest) and Debtor shall pay the outstanding Secured Balance in 60 equal monthly installments $783.00 at 6.5% interest.  If Handtmann does not supply an outstanding Secured Balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding Secured Balance.  Debtor shall maintain insurance on the Collateral.  Handtmann shall maintain its lien over the Collateral until all its plan payments have been made.  Once all its plan payments have been made, Handtmann shall release its liens and provide Debtor with title to the Collateral.   The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month.  Debtor shall make payments in the amount of $783.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment.  Handtmann is impaired and shall vote on the plan.

### Class 5 Claims:

The Class 5 claim consists of the impaired secured claim(s) of Crown Credit Company ("Crown") in the amount of $2,500.00 over a Lift Truck, Battery (the "Collateral").  Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments first to interest and then principal according to the underlying note) and Debtor shall pay the outstanding balance in 60 equal monthly installments of $50.00 at 6.5% interest.  If Crown does not supply an outstanding balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding balance.  Debtor shall maintain insurance on the Collateral.  Crown shall maintain its lien over the Collateral until all plan payments have been made.  Once all its plan payments have been made, Crown shall release its lien and provide Debtor with title to the Collateral.   The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month.  Debtor shall make payments in the amount of $50.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment.  Crown is impaired and shall vote on the plan.

#### Class 6 Claims:

The Class 6 claim consists of the impaired priority claim(s) of Restaurant Depo in the amount of approximately $9,556.92 for raw materials supplied to Debtor in the 20 days prior to the bankruptcy filing.  Debtor shall pay the outstanding balance in 30 equal monthly installments of $319.  The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month.  Restaurant Depo is impaired and shall vote on the plan.

#### Class 7 Claims:

The Class 7 claim consists of the impaired secured claim(s) of Ascentium Capital ("Ascentium") in the amount of $31,241 over a 2017 Bobtail Truck (the "Collateral").  Within 20 days of the confirmation date, creditor shall provide Debtor with an outstanding balance (after applying all post-petition payments first to interest and then principal according to the underlying note) and Debtor shall pay the outstanding balance in 60 equal monthly installments of $607.00 at 6.5% interest.  If Ascentium does not supply an outstanding balance within 20 days of Confirmation, then Debtor may seek Court assistance to allow the Debtor to obtain said outstanding balance.  Debtor shall maintain insurance on the Collateral.  Ascentium shall maintain its lien over the Collateral until all plan payments have been made.  Once all its plan payments have been made, Ascentium shall release its lien and provide Debtor with title to the Collateral.  The first payment shall be due the fifteenth 15th day of the month to occur 30 days after the effective date with subsequent payments due the 15th day of each following month.  Debtor shall make payments in the amount of $607.00 monthly until Debtor receives a new amortization schedule from the creditor in accordance with the plan treatment.  Ascentium is impaired and shall vote on the plan.

#### Class 8 Claims:

The Class 8 claims consists of the unsecured creditor claims that supply a critical need to Papa Grande such that an undue hardship would occur to the Debtor if the creditor stopped providing product, and for, which there is no readily available substitute.  There are approximately $283,405 in critical vendor claims.  Debtor shall pay the critical vendor claims 75% in pro rata quarterly payments of $10,700 per quarter until paid in full.  The first payment shall be made January 1, 2020.  Subsequent payments shall be made the first day of each calendar quarter.  The class 6 claims are impaired and shall vote on the plan.

|  | Claim Amount | POC # |
|---|---|---|
| Chesapeake Spice Company | $58,516 | 2 |
| Hojas Y Especies El Chicano | $30,067 | 5 |
| Hojas Para Tamal La Guadalupana | $18,211 | 5 |
| ViscoFan USA | $32,052 | 8 |
| Packall Packaging Inc. | $36,854 | 27 |

| | | |
|---|---|---|
| Hovus | $95,105 | |
| Sanchez Distributors Inc. | $12,600 | |
| Total | $283,405 | |

### Class 9 Claims:

The Class 9 claims consists of the general unsecured claims.  There are approximately $1.9 million in general unsecured claims for Papa Grande and $50,882 for KHRL.  Creditors of KHRL are denoted with at "(K)" next to their name.  Debtor shall pay general unsecured claims 75% in pro rata quarterly payments of $42,500 per quarter until paid in full.  The first payment shall be made October 1, 2020, and subsequent payments shall be made the first day of each calendar quarter.  The unsecured creditors are listed below with the amount to be paid on each claim unless an objection is filed.  Additionally, there are several creditors that either were scheduled as secured or filed secured claims that have been placed entirely or partially in the general unsecured class because Debtor claims they are wholly or partially unsecured or disputed.  The class 9 claims are impaired and shall vote on the plan.

Debtor may, but is not required to, file a motion to determine secured status or an objection for those creditors, which have been identified below with "(s)" next to the creditor's name.

**Upon receiving the full payment provided for by the Plan of Reorganization, any Class 8 creditor that filed any form of lien, notice of lien, or lien affidavit against the Debtor, including but not limited to UCC and judgement liens, shall file the necessary documents to release such liens.  If the creditor refuses or fails to file such documents within 30 days of final payment and written demand by the Debtor, the Debtor may reopen the bankruptcy to have the court release the lien or file in state court to have the lien released, with all costs and fees associated with the release assessed against the creditor. All Class 8 creditors shall be enjoined from pursuing any Class 8 Debt from a guarantor of said debt for as long as the Debtor complies with the class 8 payment terms.**

| Creditor | Claim | POC # |
|---|---|---|
| ADT LP **filed in 19-50390 | $309,584 | 3 |
| Green Bay Packaging Inc. | $18,104 | 3 |
| Office Depot/Office Max | $2,029 | 4 |
| El Rancho Supermercado **filed in 19-50390 | $30,067 | 5 |
| City Public Service-Electric | $13,586 | 6 |
| Waste Management/San Antonio **filed in 19-50390 | $4,686 | 6 |
| SCHNEIDER INDUSTRIES INC. | $10,245 | 7 |
| Institute for Environmental Health, Inc. | $2,965 | 10 |
| SSS Ingredients | $2,744 | 11 |

13

| | | |
|---|---|---|
| Coastal Transportation Service | $6,429 | 12 |
| Refrigerated Transport | $32,778 | 13 |
| Colorado Boxed Beef Co. | $8,402 | 15 |
| Labor On Demand, INC | $28,073 | 16 |
| Diagraph Foxjet | $6,258 | 18 |
| South Texas Spice Co | $21,037 | 19 |
| JEAR Logistics | $6,296 | 20 |
| Crown Lift | | 21 |
| FedEx Corporate Services | $11,226 | 24 |
| Handtman Inc. | $55,517 | 25 |
| Synchrony bank | $1,760 | 26 |
| PHOENIX FREIGHT | $7,790 | 29 |
| 1 World Sync | $2,638 | |
| A&A Machine Shop | $2,003 | |
| Accident Fund | $12,235 | |
| Acosta | $25,003 | |
| Advantage Capital (S) | $242,004 | |
| Alchemy | $9,353 | |
| Ameritas Life Insurance | $538 | |
| APG A-perfect Graphic | $478 | |
| AT&T | $0 | |
| AT&T | $7,985 | |
| B & B SUPPLY | $600 | |
| Baur Tape and Label | $16,685 | |
| Big State | $2,396 | |
| Blanco Rentals | $92 | |
| Bridge Capital Corp | $1,905 | |
| Capital Advance Services | $80,413 | |
| Capital Merchant Services | $79,420 | |

| | | |
|---|---|---|
| Capital One Visa 1609 | $30,889 | |
| Capital One Visa 4236 | $1,374 | |
| CHC Companion | $18,498 | |
| CHS PFI | $6,364 | |
| Cintas | $6,620 | |
| COASTAL SALES ASSOCIATES, INC. | $55 | |
| Commerce Technologies, LLC | $13,005 | |
| Concentra | $139 | |
| Coordinated Strategic Alliances | $1,794 | |
| CPS Energy | $13,586 | |
| CTRMA Processing | $83 | |
| D & J Food Supply | $9,332 | |
| Dalton's Club Marketing Serv | $5,688 | |
| DanHil Containers | $57,255 | |
| David Sanchez DBA | $239 | |
| Daymon Worldwide Inc. | $14,122 | |
| Delta Printing Co. | $6,438 | |
| Department of the Treasury | $291 | |
| DeRosa Mangold Consulting | $47 | |
| ECHO Global Logistics Inc. | $1,900 | |
| Edict Systems, Inc. | $350 | |
| El Rancho Food Service | $1,420 | |
| El Terrifico LLC | $4,000 | |
| ENGLAND LOGISTICS | $9,505 | |
| E-Z Edge | $1,461 | |
| Felipe Aguilar | $100 | |
| GP Labels | $4,037 | |
| HCTRA-VIOLATIONS | $54 | |
| IEH Laboratories | $875 | |

14

| | | |
|---|---|---|
| Immigrations and Customs Enforcement | $150,000 | |
| Infinium A/C & Refrigeration | $349 | |
| Integrity Express Logistics | $9,070 | |
| iTrade Network | $3,024 | |
| JBS Packerland | $46,796 | |
| John Lane & Associates | $10,555 | |
| Jules and Associates | $3,083 | |
| Julian Cantu | $2,934 | |
| KANSAS PROTEIN FOODS | $9,144 | |
| LOMA Systems | $6,823 | |
| Managed Prescription Program | $79 | |
| Marcus Food Company | $10,550 | |
| MAREL INC. | $1,081 | |
| Martin & Drought, PC | $0 | |
| McLain Foods, Inc. | $16,600 | |
| Monte R. Barnes FTC Inc. | $2,213 | |
| Murphy USA | $1,613 | |
| Nationwide Insurance | $22,903 | |
| NATWELL SUPPLY CORP. | $200 | |
| Netwel Supply Corp | $317 | |
| North Texas Tollway Authority | $52 | |
| Pacesetter Personal Services | $13,785 | |
| PESA Labeling | $15,910 | |
| Pitney Bowes-5802518 | $37 | |
| Pitney Bowes Purchase Power | $69 | |

| | | |
|---|---|---|
| Poly-clip System Corp. | $3,397 | |
| POLYMERALL | $18,235 | |
| Qvest | $55,000 | |
| REBECCA GONZALES | $520 | |
| Resource Solutions LLC | $4,596 | |
| RG Marketing & Consulting | $11,750 | |
| RogCo Inc. | $34,032 | |
| Roto Rooter Services Co. | $2,376 | |
| SAGE Software | $4,788 | |
| San Antonio Armature Works | $1,005 | |
| SAN ANTONIO MANUFACTURES ASSOCIATION | $450 | |
| San Antonio Water Systems | $0 | |
| SanTex Bearing | $78 | |
| Shamrock Meats, Inc | $7,375 | |
| Silliker, Inc. | $345 | |
| Smithfield Foods | $25,640 | |
| SOS Enviro Services, LLC. | $26,027 | |
| SOUTHWASTE DISPOSAL , LLC. | $9,469 | |
| Sure Good Foods | $17,224 | |
| Synergistic Environmental | $1,920 | |
| Sysco - San Antonio | $833 | |
| TAYLOR MADE HOSE | $241 | |
| Texas Packing Company | $20,429 | |
| TIPPER TIE | $55,442 | |
| T-Mobile | $630 | |
| TxTag | $345 | |
| U S Dept of Agric.-741884616 A Food | $3,327 | |

| | | |
|---|---|---|
| Safety & Inspctin Ser- | | |
| ULINE | $3,666 | |
| Up Hill Marketing | $1,800 | |
| US Department of Agriculture - FSIS | $2,144 | |
| Valero [ACH-1] | $4,623 | |
| Veritiv Corporation | $7,441 | |
| Viskoteepak | $5,139 | |
| WebTPA | $450 | |

| | | |
|---|---|---|
| WERNER LOGISTICS | $8,650 | |
| ZAVALA'S PALLETS | $2,060 | |
| **Monte Barns CPA (K)** | **$5,000.00** | |
| **Genaro Hernandez (K)** | **$15,000.00** | |
| **Martin & Drought, PC (K)** | **$8,882.50** | 7 |
| **Frank Serros (K)** | **$2,000.00** | |
| **Lang Wang (K)** | **$20,000.00** | |

**Class 10 Claims:**

The Class 10 claims consists of the unsecured claims of insiders.  There are approximately $1.57 million in unsecured insider claims.   Debtor shall pay unsecured insider claims 75% in pro rata quarterly payments of $36,800 per quarter until paid in full.   The first payment shall be made the later of October 1, 2026, or when the last general unsecured payment has been made and subsequent payments shall be made the first day of each calendar quarter.  The unsecured insider creditors are listed below with the amount to be paid on each claim unless an objection is filed. The unsecured insiders are impaired but do not vote on the plan.

Andy Garcia            $1,500,000
Kenny Garcia Jr.       $9,974
Natalie Garcia         $59,359

**Class 11 Claims:**

The Class 11 claims consist of Equity Holders Kenny and Hilda Garcia.  Equity Holders shall retain their interest in the Debtor.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. **Debtor shall file all objections to claims within 60 days of the Confirmation Date except as**

16

**provided for herein in regard to particular government creditors with shortened objection deadlines.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtor's plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

Debtor may, but is not required to, file a motion to determine secured status and/or an objection to claim in regard to the following creditors:

| | |
|---|---|
| Yellowstone | $159,833.00 |
| Advantage Capital Funding | $236,936.80 |
| Corporation Service Company/Cofactor, LLC | $0 |
| Immigration Customs Enforcement | $150,000 |
| Total | $546,769.80 |

Retention of Jurisdiction

The Court will retain jurisdiction as set out in the Plan.

Interests Retained by the Debtor

The Debtor is retaining its current ownership interests in its real and personal property, subject to the secured and unsecured claims of its creditors.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is rejecting all prepetition executory contracts not specifically assumed by court order or as indicated below.   Debtor believe all the organizational agreements with is business entities are not executory; however, to the extent they are found executory, Debtor assume those agreements.

| | |
|---|---|
| Multivac (Lease of 2016 Packaging F2). Estimated Outstanding Balance $30,989.20.  Monthly Payment $1,408.60 | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |

17

| Multivac (Lease of 2015 Packaging F2) Estimated Outstanding Balance $94,015.89. Monthly Payment $2,885.33. | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |
|---|---|
| US Bank (Lease of 2017 Forklift) Estimated Outstanding Balance $24,000.04. Monthly Payment $631.58 | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |
| Crown Lift (Lease of 2017 Forklift) Estimated Outstanding Balance $14,542.47. Monthly Payment $538.61 | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |
| Liftmaster (Lease of 2016 Forklift) Estimated Outstanding Balance $29,873.72. Monthly Payment $631.58 | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |
| Time Payment Corporation (Lease of Tapper Machine) Estimated Outstanding Balance   $4545.60. Monthly Payment $378.80 | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |
| TUCS (Lease of 2018 Form Filler) Estimated Outstanding Balance $151,800. Monthly Payment $3,083.00 | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |
| 4 Hour Funding (Lease of Dyson 2010 Cat) Estimated Outstanding Balance $6861.68. Monthly Payment $575.18 | To be assumed.  All payment arrearages to be added to the end of the lease and the lease extended a corresponding number of months. |
| Michael Berlanga and Joanne Gonzalez, Brokers.  Prepetition listing agreement to sell Debtor's real estate at 1802 Jackson Keller. | To be rejected; however, to the extent that Brian Allison, Dr. Ken Hamilton, or Jacobs Interests purchases the property, Michael Berlanga and Joanne Gonzalez shall be entitled to 2.5% of 4.5% broker's commission per the sales motion. |

Unless the time to file a claim for rejections damages is specifically limited herein or by other court order, rejections damages must be filed no later than 30 days after the effective date of the plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Continued Corporate Existence. All of KHRL's assets and liabilities shall be substantively consolidated with Papa Grande.  Both Debtors' shall continue to exist after the Effective Date as their respective Texas entities, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right

18

to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02    <u>Conversion of Debt to Equity</u>.   Debtor has filed a motion to incur debt provided by the children of Kenny and Hilda Garcia.   Prior to plan confirmation, the motion proposes for the children to purchase a boiler on a secured loan at 6% interest and provide a $200,000 line of credit for purchasing raw materials and as an emergency maintenance fund.   Upon confirmation of this plan, all amounts outstanding from the purchase of the boiler and the $200,000 line of credit shall convert to equity at a rate of 1% of membership interest in Debtor for each $20,000 converted to equity.  Finally, the children have agreed to contribute an additional $145,000 of cash to the debtor on the effective date for an additional 8% of ownership in the Debtor and have agreed to provide an additional $300,000 in guaranteed credit to assist Debtor in moving its operation to a new facility.

7.02    <u>Advance Payment of Claims</u>.   Provided Debtor stays current on all payments to creditors pursuant to the Plan, Debtor may make advance payments on claims in Debtor's business judgment discretion, except Debtor shall not make any payments to the unsecured insider claims until all general unsecured and critical vendors have been paid in accordance with the plan.

**ARTICLE VIII**
**<u>GENERAL PROVISIONS</u>**

8.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1    Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtor's estates and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code

8.01.2    Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of

limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3    Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4    Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as it existed on the Filing Date

8.01.5    Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6    Bankruptcy Estate or Estates shall mean all of the assets owned by the Debtor and its respective estates.

8.01.7    Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8    Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9    Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10    Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

8.01.11    Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12    Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13    Consolidated Debtor shall mean KHRL Group, LLC

8.01.14    Creditor shall mean any entity holding a Claim.

8.01.15    Debtor shall mean Papa Grande Gourmet Foods, LLC.

8.01.16    Debtors shall mean Papa Grande Gourmet Foods, LLC and KHRL Group, LLC

8.01.17    Disbursing Agent shall mean the Debtor.

8.01.18    Disclosure Statement shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

8.01.19    Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.20    Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.21    Effective Date shall mean 30 days after entry of a Final Order confirming Debtor's plan of reorganization.

8.01.22    Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.23    Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

8.01.24    Filing Date shall mean the date Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.25    Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.26   General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.27   Holder shall mean the owner or Holder of any Claim or Interest.

8.01.28   Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.29   Insider has the definition ascribed to it under the Bankruptcy Code.

8.01.30   Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.31   Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit.  The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit.  Compromises of Avoidance Actions may include cash or benefits to the Debtor or Reorganized Debtor and are not Net Proceeds.

8.01.32   Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.33   Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.34   Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.35   Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.36   Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.37   Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37   Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38   Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.01.39   Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.01.40   Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE AND EFFECT OF CONFIRMATION

9.01 Legally Binding Effect.   The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan.   On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any  Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and temporarily enjoined from asserting any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors and any guaranty claims as long as Debtors complies with its obligations under this Plan.

9.02 Limited Discharge of Debtors and Injunction. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtors is permanently enjoined on and after the Effective Date from (a) commencing or continuing in any

23

manner any action or other proceeding of any kind against the Debtors or its property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or its property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estate with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estate except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

The Debtors is discharged from any debt which arose prior to confirmation, whether as maker or guarantor, except as provided for in the Plan, Order Confirming Plan or the Bankruptcy Code, upon completing the terms and payments of the Plan of Reorganization. Debtors will not be discharged from any debt except from discharge under Section 523 of the Code, except as provided in Rule 4007(C) of the Federal Rules of Bankruptcy Procedure. Debtors shall continue filing post-confirmation quarterly reports and pay UST fees until the case is closed, dismissed or converted.

9.03 Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

## ARTICLE X
## OTHER PROVISIONS

## DEFAULT

10.01. Default. Upon default by the Debtor, creditors are required to provide written notice of such Default to the Debtor and its counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first class mail, and the Debtor shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtor and Ronald Smeberg. If the Debtor fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtor shall be entitled to two (2) notices of default for each calendar year. On the third (3rd) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without

further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

    10.02. Vesting of Estate Property and Effect of Default.  On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in the Debtor that held title to the asset or property, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor comply with the terms of the Plan, including the making of all payments to creditors provided for in such Plan.  If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

                Respectfully submitted,

                BY: */s/ Kenneth Garcia* _____
                Name: Kenneth Garcia, President

              THE SMEBERG LAW FIRM, PLLC

              BY:/s/ Ronald J. Smeberg_____
                    Ronald J. Smeberg
                    SBN: 24033967
                    THE SMEBERG LAW FIRM, PLLC
                    2010 W Kings Hwy
                    San Antonio, Texas 78201
                    Tel: (210) 695-6684
                    Fax: (210) 598-7357
                    ATTORNEYS FOR DEBTOR

Exhibit E – Liquidation Analysis

*Debtor's Estimated Liquidation Value of Assets As of June 3, 2019.*

**Assets**

| | |
|---|---|
| a. Cash on hand June 3, 2019 | $18,012 |
| b. Receivables (Discounted 10%) $615,000 | $553,500 |
| c. Equipment Equity $1.5 Million (Discounted 40%)[1] | $900,000 |
| | $54,000 |
| d. Finished inventory $60,000 (Discounted 10%) | $105,610 |
| *e.* Raw Inventory (Discounted 50%)$211,220 | $304,392 |
| *f.* Real Estate  $6,300,000 (Discounted 25%) | $4,725,000 |
| | |
| *Total Assets at Liquidation Value* | $6,660,514 |
| **Less:** | |
| Property Taxes and Secured TransPecos Claims | $6,264,767 |
| **Less**: | |
| Chapter 7 trustee fees and expenses | $45,000 |
| **Less**: | |
| Chapter 11 administrative expenses | $145,000 |
| **Less**: | |
| Priority claims, excluding administrative expense claims | $122,883 |
| *Total Property Tax, Secured and Priority Claims* | |
| | $6,577,650 |
| | |
| (1) Balance for unsecured claims | $82,864 |
| (2) Approximate total dollar amount of unsecured claims | $3.8 million |
| Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation: | 2.1% |
| Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan: | 75% |

---

[1] Equipment without purchase money security interests.